# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WILLIAM J. SKEPNEK and ) <br> STEVEN M. SMOOT, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ROPER & TWARDOWSKY, LLC and ) <br> ANGELA ROPER, ) <br> ) <br>     Defendants. ) <br> _____ ) | CIVIL ACTION <br><br> No. 11-4102-KHV |

## MEMORANDUM AND ORDER

William J. Skepnek and Steven M. Smoot bring this diversity action against Roper & Twardowsky, LLC and Angela Roper alleging breach of contract, breach of fiduciary duty and quantum meruit claims which stem from an alleged attorneys' fee sharing agreement. See Complaint (Doc. #1) filed September 8, 2011. This matter is before the Court on the Motion To Dismiss Or, In The Alternative, To Transfer Venue (Doc. #17) which defendants filed on December 30, 2011.

Defendants seek dismissal, arguing that the Court lacks both personal and subject matter jurisdiction. With respect to personal jurisdiction, defendants argue that they lack the requisite minimum contacts. With respect to subject matter jurisdiction, defendants argue that no justiciable case or controversy exists because some claims are not ripe, in that (1) defendants have never received compensation for work done on behalf of some clients, (2) the claims of some clients remain pending and (3) plaintiffs never provided time records to defendants.

Under 28 U.S.C. §1404(a), defendants alternatively argue that this case should be

transferred to the District of New Jersey, which they contend is a more convenient forum. For the reasons stated below, the Court overrules defendants' motion.

## I. Factual Background

Viewed in the light most favorable to plaintiffs, the complaint and record evidence are as follows:

William Skepnek is lawyer licensed to practice in Kansas, Oklahoma and Texas. He is a resident of Kansas. Steven Smoot is a resident of Texas and is licensed to practice law there. Angela Roper is a licensed attorney who practices and resides in New Jersey. Roper and Twardowsky, LLC is a New Jersey liability company with its only office in Totowa, New Jersey. Roper is a principal/officer/shareholder of Roper & Twardowsky.

Skepnek and Smoot have special expertise prosecuting legal malpractice actions. In 2001, Roper contacted Skepnek (in Kansas) regarding a group settlement that New York law firm Leeds, Morelli & Brown had reached with Prudential Life Insurance Company of America, Inc. on behalf of 359 Prudential employees with employment discrimination claims. Over the next year, Skepnek and Smoot traveled to New Jersey multiple times to meet with Roper, other attorneys from Roper & Twardowsky and potential clients to discuss potential claims against Leeds, Morelli & Brown and Prudential. In the fall of 2002, Roper & Twardowsky, Skepnek and Smoot agreed to bring claims against Leeds Morelli & Brown and Prudential on behalf of any of the 359 employees who wished to participate and filed suit in New Jersey. Orally and in a written fee division agreement, Roper & Twardowsky and Skepnek and Smoot agreed to jointly handle the litigation and to divide legal fees with 50 per cent to Roper & Twardowsky and 50 per cent to Skepnek and Smoot.

The cases were initially dismissed. On appeal, however, the cases were reversed and

remanded. During this time, Roper & Twardowsky signed up more than 200 clients to participate in the case. Meanwhile, unbeknownst to Skepnek and Smoot, Roper engaged Steve Snyder, a lawyer from Maryland, to consult on the case. She also entered into a joint fee agreement with him. This fee agreement referred to Skepnek as "prior counsel" and set forth fee-sharing terms between Snyder and Roper & Twardowsky.

In the summer/fall of 2007, Roper called Skepnek to ask his advice about whether the clients should voluntarily dismiss their claims against Leeds, Morelli & Brown, as Snyder had advised. Skepnek, who did not know about his status as "prior counsel," disagreed with Snyder, and Roper asked him to travel to New Jersey to explain to the clients why they should not dismiss their claims. This resulted in a "falling out," with Snyder and Roper each vying for clients to follow their respective recommendations. Skepnek then traveled to New Jersey to participate in a lengthy meeting with the clients to explain why they should not dismiss. Skepnek spend many hours speaking with clients immediately after the meeting and later by phone. Ultimately, approximately 200 clients (2/3 of the total) followed his advice and remained with Roper & Twardowsky.

In 2009, Skepnek met with Roper and William Gold, another attorney who her firm had engaged, to discuss trial strategy. Skepnek still did not know about his status as "prior counsel."

In 2010, Roper called Skepnek to say that the Prudential cases had settled and ask about the requirements under the aggregate settlement rule. She was vague about the terms of the settlement and refused to give Skepnek a copy of it, but asked him to assist her in a fee dispute with Snyder. Roper also told Skepnek that he had a claim against Snyder because Snyder was receiving fees to which Skepnek was entitled. At this point, Skepnek learned about the fee agreement between Snyder and Roper & Twardowsky. Later in 2010, Roper told Skepnek that

except as to the original small group of clients in 2002, he was entitled to no portion of the fees because he had abandoned the cases.

**II.     Analysis**

   **A. Personal Jurisdiction**

Rule 12(b)(2), Fed. R. Civ. P., governs motions to dismiss for lack of personal jurisdiction.  Plaintiffs bear the burden of establishing personal jurisdiction and at this stage of the litigation need only make a prima facie showing.  Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1069-70 (10th Cir. 2008).  Plaintiffs may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over defendants.  TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd., 488 F.3d 1282, 1286 (10th Cir. 2007).  To the extent they are uncontroverted, the Court must accept the well-pleaded allegations of the complaint.  Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).  If the jurisdictional allegations are challenged by an appropriate pleading, plaintiffs have the duty to support their jurisdictional allegations by competent proof of supporting facts. Pytlik v. Prof'l Res., Ltd., 887 F.2d 1371, 1376 (10th Cir. 1989).  The Court resolves any factual disputes in plaintiffs' favor.  Wenz, 55 F.3d at 1505.

In a federal diversity case, the law of the forum state – here, Kansas – determines the Court's jurisdiction over defendants.  Fed. R. Civ. P. 4(e); Marcus Food Co. v. DiPanfilo, 671 F.3d 1159, 1166 (10th Cir. 2011).  To establish jurisdiction, plaintiffs must show two things: first, that the Kansas long-arm statute contemplates the exercise of jurisdiction, and second, that jurisdiction comports with the due process requirements of the Fourteenth Amendment.  Marcus Food Co., 671 F.3d at 1166.  The Kansas long-arm statute is construed liberally to allow jurisdiction to the full extent permitted by due process, which means that the Court need not

conduct a statutory analysis apart from the due process analysis.  Id.; Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1159 (10th Cir. 2010).

The due process analysis is two-fold.  First plaintiffs must show that defendants have "minimum contacts" with Kansas by demonstrating that they "purposefully availed" themselves of the protections or benefits of the state's laws and "should reasonably anticipate being haled into court [] here."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-76 (1985). see also OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1090-91 (10th Cir. 1998).  The Court may exercise specific personal jurisdiction if this case arises directly from or relates to defendants' Kansas-related activities.  Id. at 1091.  It may exercise general personal jurisdiction if defendants otherwise maintain "continuous and systematic" general business contacts with Kansas.  Id.  Then, if defendants have the requisite minimum contacts with Kansas, the Court proceeds to the second step in the due process analysis: ensuring that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).  At this stage, the burden shifts to defendants to present a compelling case that other considerations would render jurisdiction unreasonable.  See Dudnikov, 514 F.3d at 1080.  This prong evokes a sliding scale: the weaker plaintiffs' showing on minimum contacts, the less defendants need to show in terms of unreasonableness.  TH Agric. & Nutrition, LLC, 488 F.3d at 1292.

Here, plaintiffs argue that the Court has specific jurisdiction because defendants (1) entered into an express contract with a Kansas resident – Skepnek – to be performed in whole or in part by him in Kansas and (2) committed torts in Kansas by misleading Skepnek about his status as co-counsel in the case, concealing the agreement with Snyder from him and telling him that he was jointly representing Prudential clients in order to induce him to take action for their

5

benefit.. K.S.A. §§ 60-308(b)(E) and (D).

Defendants do not dispute that they entered a contract with Skepnek or that Roper engaged in telephone conversations with him in Kansas; thus the Court finds that the Kansas long-arm statute contemplates jurisdiction. Defendants argue, however, these their contacts with Kansas were *de minimus* and so attenuated that an assertion of jurisdiction offends the traditional notions of fair play and substantial justice. Defendants cite Beiderman v. Schnader, Harrison, Siegal & Lewis, 765 F. Supp. 1057 (D. Kan. 1991) for the proposition that out-of-state lawyers and firms who perform services primarily outside the State of Kansas are not subject to jurisdiction here. In Beiderman, the district court held that it did not have personal jurisdiction in a fee dispute case brought by Kansas clients against a Pennsylvania law firm which made brief visits to Kansas and called, sent letters to and received checks from those clients. In concluding that it lacked personal jurisdiction over the firm, the court focused on the fact that plaintiffs' claims did not arise from defendants' Kansas-related activities. Plaintiffs counter that Loeffelbein v. Milberg Weiss Bershad Hynes & Lerach, 33 Kan. App. 2d 593, 106 P.3d 74 (2005) is controlling. In Loeffelbein, the Kansas Court of Appeals concluded that a defendant law firm was subject to personal jurisdiction because it committed the alleged tortious acts during its contacts with Kansas residents. It distinguished Biederman, which involved the "ordinary use of the mail and telephones in the forum state."

Because plaintiffs allege that Roper and her firm committed the alleged tortious acts during her contacts with Skepnek in Kansas, the Court finds that Loeffelbein is more analogous to the present situation. Thus it concludes that defendants are subject to specific personal jurisdiction and overrules defendants' motion on this ground.

### B. Subject Matter Jurisdiction

Defendants' argument on this issue is difficult to follow. Defendants contend that the Court lacks subject matter jurisdiction because (1) defendants have never received compensation for work done on behalf of some clients, (2) the claims of some clients remain pending, and (3) plaintiffs never provided time records to defendants. Defendants provide no legal support for their arguments and at this stage, as best the Court can tell, these arguments address the question of damages rather than the viability of plaintiffs' claims. The Court thus overrules defendants' motion on this ground.

### C. Motion To Transfer Venue

Under 28 U.S.C. §1404(a), defendants ask the Court to transfer this case to the United States District Court for the District of New Jersey. Plaintiffs oppose transfer but do not dispute that the District of New Jersey would be a legally proper venue for this action.

Under 28 U.S.C. §1404(a), the Court may transfer a case to any district or division where it might have been brought for "the convenience of the parties and witnesses" and "in the interest of justice." The decision whether to grant a motion to transfer is within the sound discretion of the district court. See Scheidt v. Klein, 956 F.2d 963, 965 (10th Cir. 1992). In deciding a motion to transfer, the Court considers the following factors: plaintiffs' choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; the difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy,

expeditious and economical.  Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991).

The fact that plaintiffs filed this action in the District of Kansas creates a presumption in favor of retaining this case, and the Court thus largely adopts plaintiffs' arguments on this issue. In particular, the Court is persuaded by plaintiffs' discussion of the first-to-file rule, which affords deference to the first-filed action where two district courts have jurisdiction over the same controversy.  Lipari v. U.S. Bancorp NA, 345 Fed. Appx. 315 (Table), 2009 WL 2055125, at *1 (10th Cir., July 16, 2009).  The Court thus, in its discretion, overrules defendants' motion to transfer the case to the District of New Jersey.

**IT IS THEREFORE ORDERED THAT** the Motion To Dismiss Or, In The Alternative, To Transfer Venue (Doc. #17) filed by defendants on December 30, 2011 be and hereby is **OVERRULED.**

Dated this 27th day of September, 2012 at Kansas City, Kansas.

> s/ Kathryn H. Vratil
> KATHRYN H. VRATIL
> United States District Judge