UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIAM J. SKEPKEK and
STEVEN M. SMOOT,

                Plaintiffs,

v.                                           Case No. 11-4102-DDC

ROPER & TWARDOWSKY, LLC and
ANGELA ROPER,

                Defendants.


## ORDER

      This case is before the undersigned U.S. Magistrate Judge, James P. O'Hara, on plaintiffs' latest motion to compel (**ECF doc. 224**).  Specifically, plaintiffs move to compel defendants to produce responsive documents to plaintiffs' fourth set of requests for production.  For the reasons discussed below, plaintiffs' motion is granted in part and denied in part.

      On April 10, 2014, plaintiffs served their fourth set of production requests.[1] Plaintiffs explain that these requests were prompted by the March 11-12, 2014 depositions of defendant Angela Roper and of Kenneth Thyne.  Defendants served their responses to plaintiffs' requests on May 9, 2014.[2]  Plaintiffs made five requests in their

---

[1] ECF doc. 193.

[2] ECF doc. 212.

fourth set of requests for documents, four of which ask for "all documents" from trust or operating accounts of defendant Roper & Twardowsky, LLC ("R&T") regarding the Prudential litigation from 2002 to the present.[3]  The fifth request asks for "all documents" reflecting the potential resolution or settlement of R&T's clients who did not participate in the initial Prudential litigation settlement.[4]

---

[3] Request for Production No. 1: "All documents reflecting money deposited in to any trust account associated with the firm Roper & Twardowsky, LLC, including any predecessor firm due to a name/partner change, regarding the Prudential litigation from 2002 to present, including documents or records contained in an electronic financial database system, such as QuickBooks, Quicken, etc."

Request for Production No. 2: "All documents reflecting money withdrawn from or checks cut from any trust account associated with the firm Roper & Twardowsky, LLC, including any predecessor firm due to a name/partner change, regarding the Prudential litigation from 2002 to present, including documents or records contained in an electronic financial database system, such as QuickBooks, Quicken, etc."

Request for Production No. 3: "All documents reflecting money deposited into any operating account associated with the firm Roper & Twardowsky, LLC, including any predecessor firm due to a name/partner change, regarding the Prudential litigation from 2002 to present, including documents or records contained in an electronic financial database system, such as QuickBooks, Quicken, etc."

Request for Production No. 4: "All documents reflecting money withdrawn from or checks cut from any operating account associated with the firm Roper & Twardowsky, LLC, including any predecessor firm due to a name/partner change, regarding the Prudential litigation from 2002 to present, including documents or records contained in an electronic financial database system, such as QuickBooks, Quicken, etc."

[4] Request for Production No. 5: "All documents constituting or reflecting the resolution and/or settlement or potential settlement, of the claims of those some 42 claimants represented by the firm Roper & Twardowsky, LLC who did not participate in the initial settlement with Prudential in 2010."

O:\ORDERS\11-4102-DDC-224.docx

Instead of producing documents in response to plaintiffs' *document* requests, defendants responded with general objections, specific objections, and two answers subject to objections.  Initially, it appears that defendants did not provide any documents in response to plaintiffs' requests except for one chart summarizing settlement information in response to Request for Production No. 5.

On June 9, 2014, plaintiffs filed a motion to compel defendants to "make meaningful and adequate responses to Plaintiffs' Fourth Set of Production Requests."[5] With respect to Requests for Production Nos. 1-4, plaintiffs assert that they seek these financial records for two reasons: (1) to calculate damages in this case—a percentage of the net recovery in the Prudential case; and (2) to dispel defendants' contention that plaintiffs abandoned the Prudential litigation financially.  Plaintiffs assert that the settlement documents sought in Request for Production No. 5 will show the total fee in the Prudential case, which will allow them to calculate damages.

Defendants respond that plaintiffs' motion is untimely.  Regardless of its untimeliness, defendants assert that the requests for financial records are overbroad, unduly burdensome, and irrelevant to the issues in this case.  With respect to Request No. 5, defendants argue that the settlement information sought is irrelevant and subject to confidentiality agreements.  Further, defendants suggest that production of settlement

---

[5] ECF doc. 225-1 at 1.

documents serves no purpose because defendants have provided plaintiffs with all of the relevant information concerning the settlements in summary form.

Fed. R. Civ. P. 26(b)(1) provides that generally the scope of discovery is limited to the parties' pleaded claims and defenses, but that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." When a party files a motion to compel and asks the court to overrule objections, the objecting party must specifically show in its response to the motion how each discovery request is objectionable.[6] Objections initially raised but not supported in response to the motion to compel are deemed abandoned.[7] However, if the discovery request appears facially objectionable in that they are overly broad or seek information that does not appear relevant, the burden is on the movant to demonstrate how the requests are not objectionable.[8] With these standards in mind, the court addresses defendants' objections and responses to the disputed requests.

## I.   Timeliness

Before addressing the substance of plaintiffs' motion, the court will briefly address defendants' argument that plaintiffs' motion is untimely. Defendants assert that plaintiffs already have requested identical financial records in their third set of production requests,

---

[6] *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670-71 (D. Kan. 2004).

[7] *In re Bank of Amer. Wage & Emp't Practices Litig.*, 275 F.R.D. 534, 538 (D. Kan. 2011).

[8] *Id.*

which defendants responded to on March 11, 2013.[9]   Specifically, defendants argue Request Nos. 1-4 in plaintiffs' fourth set of document requests are "virtually identical" to Request Nos. 39-40 and 43-44 of plaintiffs' third set of document requests.  Defendants objected to the third set of requests as irrelevant, solely designed to harass, overbroad, and unduly burdensome.  As such, defendants did not provide documents in response to the requests.  Defendants admit the language in plaintiffs' fourth set of document requests "us[es] different wording th[a]n their Third Request," but they still maintain that it seeks the same information.  Therefore, defendants argue plaintiffs have waived their right to challenge defendants' objections.

Plaintiffs respond that this argument fails for two reasons: (1) because the production requests were timely issued under the court's scheduling order; and (2) because they were never meant to circumvent Rule 37.1.[10]   Plaintiffs explain that their fourth request for documents was a direct reaction to defendants' testimony during the March 2014 depositions when plaintiffs learned for the first time about how financials were handled in the Prudential litigation.  To the extent there are duplicative similarities to earlier requests, plaintiffs argue defendants never challenged them as duplicative under Rule 26(b)(2).

---

[9] *See* ECF doc. 231-3.

[10] ECF doc. 235 at 2.

As mentioned earlier, plaintiffs served their fourth requests for production on April 10, 2014,[11] and defendants served their responses on May 9, 2014.[12]   In their response to plaintiffs' fourth set of production requests, defendants notably did not make a duplicative objection.   Indeed, defendants made no mention of the alleged similarity between plaintiffs' third and fourth set of requests for production.[13]   Plaintiffs timely filed their motion to compel on June 9, 2014.[14]   In response, defendants objected for the first time that the fourth set of document requests seek the same information as the third set of requests for production.   Specifically, defendants now argue that, because plaintiffs did not file a motion to compel with respect to their third set of document requests, plaintiffs waived any issue they have with defendants' objections to their third and fourth sets of requests for documents.

Neither side presents any authority which addresses "waiver" under the specific factual situation presented in this case.   Defendants cite no cases whatsoever, but merely argue that plaintiffs "waived any issue they may have had by failing to address this issue

---

[11] ECF doc. 193.

[12] ECF doc. 212.

[13] Defendants did "incorporate by reference the objections made with respect to Plaintiffs' prior requests for production of documents" and stated "[g]iven the history of Plaintiffs' previous discovery requests and the late nature of this current request, the purpose of this request is to harass …" (ECF doc. 225-2).

[14] ECF doc. 224.

then."[15]  The court is not prepared to find a waiver under D. Kan. Rule 37.1.  Although the requests seek similar information, the court does not find that the discovery sought is unreasonably cumulative or duplicative.  By failing to file a motion to compel with regard to the third requests, plaintiffs did not waive any other timely discovery directed at the same general topics.  Plaintiffs' motion to compel responses to their fourth set of document requests was filed within the thirty-day timeline to do so.[16]  Given the history of discovery in this case, the preference in federal court that matters be decided on the merits, and having found defendants' procedural argument insufficient, the court will decide the motion to compel on its merits.  Defendants' untimeliness objection is overruled.

## II.     Objections to Requests

Under Rule 34(b)(2)(B) of the Federal Rules of Civil Procedure, the party responding to requests for production must "either state that inspection and related activities will be permitted … *or* state an objection to the request, including the reasons."  Of the five requests for production, defendants objected to all five, but answered <u>and</u> objected to Requests for Production Nos. 1 and 5.  The court has substantial discretion to

---

[15] ECF doc. 231 at 5.

[16] "Any motion to compel discovery in compliance with D. Kan. Rules 7.1 and 37.2 must be filed and served within 30 days of the default or service of the response, answer, or objection that is the subject of the motion, unless the court extends the time for filing such motion for good cause.  Otherwise, the objection to the default, response, answer, or objection is waived."  D. Kan. Rule 37.1.

determine the propriety of such requests and the sufficiency of responses.[17]   An objection

and answer preserves nothing and serves only to waste the time and resources of both the

parties and the court.[18]    Answering discovery requests "subject to" objections is

"manifestly confusing (at best) and misleading (at worse), and has no basis at all in the

Federal Rules of Civil Procedure."[19]    The court could find "whenever [defendants']

answer accompanies an objection, the objection is deemed waived and the answer, if

responsive, stands."[20]    Nonetheless, the court will address the validity of defendants'

objections.

### A.    Requests for Production Nos. 1-4

Defendants object to Requests for Production Nos. 1-4 as irrelevant, overly broad,

and unduly burdensome.   At the discovery stage, relevancy is broadly construed, and a

request for discovery should be considered relevant if there is "any possibility" that the

information sought may be relevant to the claim or defense of any party.[21]   When the

discovery sought appears relevant on its face, the party resisting discovery has the burden

---

[17] *Audiotext Commc'ns Network Inc. v. US Telecom, Inc.*, No. 94-2395, 1995 WL 625744, at *1 (D. Kan. Oct. 5, 1995).

[18] *Consumer Electronics Ass'n v. Compras & Buys Magazine, Inc.*, No. 08-21085, 2008 WL 4327253, at *3 (S.D. Fla. Sept. 18, 2008).

[19] *Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, No. 11-2684, 2014 WL 545544, at *2 (D. Kan. Feb. 11, 2014).

[20] *Id.* (citations omitted).

[21] *DIRECTV, Inc. v. Pucinelli*, 224 F.R.D. 677, 684 (D. Kan. 2004) (citing *McCoy v. Whirlpool Corp.*, 214 F.R.D. 642, 643 (D. Kan. 2003)).

to establish the lack of relevance by demonstrating that the requested discovery does not come within the broad scope of relevance as defined under Rule 26(b)(1), or is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure.[22]   Conversely, when relevancy is not apparent on the face of the interrogatory or request, the party seeking the discovery has the burden to show the relevancy of the information or documents sought.[23]   Similarly, a party resisting discovery on the basis that a request is overly broad has the burden to support its objection, unless the request is overly broad on its face.[24]   The court finds that the information requested ("all documents" reflecting money deposited or withdrawn from defendants' trust and operating accounts regarding the "Prudential litigation" for the past twelve years) is not information that appears relevant on its face.   Thus, plaintiffs have the burden to show the relevancy of the information sought.

Plaintiffs argue that the trust and operating accounts information is relevant to their calculation of damages, which they claim is a percentage of the net recovery in the Prudential litigation.   In addition, plaintiffs assert the financial information is relevant to dispel defendants' contention that plaintiffs "left [defendants] in a financial bind by not providing monetary assistance from the beginning of the Prudential litigation to the point

---

[22] *Id.*

[23] *Id.*

[24] *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 686 (D. Kan. 2000).

in 2006 when Ms. Roper brought in other counsel."[25]   Plaintiffs insist these expenses would be essential in calculating the net recovery due to them.

Defendants respond that they have provided summary information detailing: (1) all of the costs and expenses charged to the clients in the Prudential litigation; (2) all expenses advanced by the clients and expenses reimbursed by the clients; and (3) the attorney fees and recoveries resulting from recent settlements.  Defendants advise that they have also offered to provide plaintiffs with additional specific information regarding the costs paid and expended not only by defendant R&T, but also other co-counsel in the Prudential litigation.  However, defendants assert that plaintiffs rebuffed their offer, asking for nothing less than "strict literal compliance with their … requests."[26] Defendants submit that it would be overly burdensome to produce thousands of documents when the information is readily available in summary form.  Defendants insist that to produce financial records from the trust and operating accounts of R&T for the past twelve years would be unduly burdensome, invasive, and would greatly outweigh any plausible benefit to plaintiffs.

As the information relates to damages, the court tends to agree with defendants.  If plaintiffs need the "net recovery in the Prudential case" in order to multiply a percentage against that figure to calculate damages, the summary form of those numbers should be

---

[25] ECF doc. 225-1 at 5.

[26] ECF doc. 231.

sufficient.   However, with respect to "dispel[ling] Defendants' contention that the Plaintiffs abandoned the Prudential litigation financially," the specific information requested becomes more relevant.  Plaintiffs argue that defendants are claiming they left defendants in a financial bind by not providing monetary assistance from the beginning of the Prudential litigation to the point in 2006 when other counsel was brought in.  A summary format of expenses and contributions over the last twelve years per client should show what expenses were incurred and what monies were contributed; however it won't show when those expenses were paid, how they were paid, and for what they were paid.   Other relevant information missing from defendants' "summary" is money contributed by other counsel, which defendants have offered to provide.  The "summary" lacks the timing, amount, and substance of the individual expenses incurred and monies contributed.  If defendants' argument is that they were left in such a financial bind by plaintiffs that they had to seek other counsel in 2006, it is relevant for plaintiffs to have information concerning the timing and amount of expenses incurred from 2002-2006 and, at the very least, the amount of the expenses incurred and monies contributed thereafter.

Defendants also assert, however, that searching for and locating "all documents" would require them to "move through mental gymnastics … to determine which of the many pieces of paper conceivably contain some detail, either obvious or hidden, within the scope of the request."[27]  The court construes this argument to be one based on undue

---

[27] ECF doc. 231 at 7 (quoting *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 576 (D. Kan. 2009).

burden.   As the party resisting discovery, defendants have the burden to show facts demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.[28]   The objecting party must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, the discovery requests are overly broad or unduly burdensome by submitting affidavits or offering evidence revealing the nature of the burden.[29]

Defendants submitted the affidavit of Angela Roper, a partner at R&T and a named defendant in this action, as evidence that plaintiffs' requests are unduly burdensome.   Ms. Roper handles the financial records of the firm and is primarily responsible for searching for and reviewing records to respond to discovery requests. Ms. Roper estimates that searching for *and* through all of the financial records in both the firm's operating and trust accounts would take at least 100 hours of her time.  Ms. Roper asserts that it would be incredibly difficult to pull out all of the expenses related to their joint work on the case and all of the agreements.  Ms. Roper approximates that the number of responsive documents would be in the thousands.  In the event the court orders production of "all documents," defendants ask the court to order plaintiffs to compensate them at Ms. Roper's rate of $500 per hour for her time.

---

[28] *General Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 641 (D. Kan. 2003) (citing *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002)).

[29] *DIRECTV, Inc.*, 224 F.R.D. at 688 (citing *Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 672 (D. Kan. 2003)).

Based on the limited record presented, the court finds plaintiffs have met their burden to show documents reflecting the amount, timing, and description of expenses incurred and contributions made regarding the Prudential litigation from 2002-2006 is relevant.  The court finds that locating and providing this relevant information over a four-year period is not unduly burdensome.  However, information from 2006 to the present approaches the "outer bounds of relevance" and would only marginally enhance the objectives of providing useful and relevant information to plaintiffs.[30]  Defendants have shown that the requests for "all documents" from 2002 to the present is overly broad and the benefit of "all documents" after 2006, if any, is outweighed by the hardship on defendants to search for and produce that information. Therefore, defendants shall produce responsive documents to Requests for Production Nos. 1-4 for the years 2002 to 2006.  But only a "summary format" of the total expenses incurred and contributions made with respect to the Prudential litigation from 2006 to the present need be produced.

**B.      Request for Production No. 5**

Request for Production No. 5 asks defendants to produce "[a]ll documents constituting or reflecting the resolution or potential resolution and/or settlement or potential settlement, of the claims of those 42 claimants represented by the firm Roper &

---

[30] *See High Point SARL v. Sprint Nextel Corp.*, No. 09-2269, 2011 WL 3241432, at *6 (D. Kan. July 29, 2011) (citations omitted) ("Courts have found that 'when the requests approach the outer bounds of relevance and the information requested may only marginally enhance the objectives of providing information or narrowing the issues, the Court must then weigh that request with the hardship to the party from whom the discovery is sought.'").

Twardowsky, LLC who did not participate in the initial settlement with Prudential in 2010."[31]   Initially, defendants objected to this request as overly broad, burdensome, irrelevant, improperly seeking attorney-client privileged information, and improperly seeking information relating to a confidential settlement process.

As earlier explained, when ruling upon a motion to compel, the court generally considers those objections which have been timely asserted *and* relied upon in response to the motion.  The court generally deems objections initially raised but not relied upon in response to the motion as abandoned.[32]   Because defendants only rely upon their relevancy and confidentiality objections in response to this motion, the court will only address those objections.   Other objections initially raised in response to plaintiffs' requests but not supported in response to the motion to compel are deemed abandoned.

### 1.    Relevancy

Plaintiffs argue the information requested in Request No. 5 is relevant to their calculation of damages, which they describe as a percentage of the total recovery in the Prudential case.  Plaintiffs assert that these documents are instrumental to that calculation because they will reveal the *total* fee in the Prudential case.

Defendants assert that they have already provided disclosures concerning the amount of each of their client's settlement, the amount of expenses deducted from each

---

[31] ECF doc. 225-2.

[32] *Sonnino*, 221 F.R.D. at 670 (citing *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 664 (D. Kan. 1999)).

client's settlement, and the attorney's fees deducted from each client's settlement. Defendants also provided a list of legal fee amounts subject to lien claims "[w]ithout waiving and subject to [their] objections."  However, defendants argue that they should not be required to produce the settlement agreements and releases from the most recent settlement because those documents have nothing to do with the parties' claims in this matter.

Although plaintiffs appear to have the numbers necessary to calculate their damages, they argue that defendants' chart is insufficient because it is not the "equivalent of evidence."[33]  Plaintiffs assert that they are not "bound to deem Defendants' chart reliable" and the documents for this second wave of settlement "are not different from settlement documents" defendants previously provided for the first wave of settlement. Plaintiffs conclude that this "'second' wave of settlement are crucial to [their] damages claims and defendants should be compelled to produce them."[34]

Plaintiffs are suing defendants to enforce a "Fee Division Agreement," which plaintiffs contend entitles them to a percentage of the total recovery in the Prudential case.  Under the broad standard of relevancy, documents reflecting the settlement or potential settlement of claimants represented by R&T in the Prudential litigation is relevant to plaintiffs' claims.  Defendants are incorrect that the information requested has

---

[33] ECF doc. 225-1 at 8.

[34] *Id.* at 9.

"nothing to do with the parties claims in this matter."[35]   Because Request for Production No. 5 seeks information that is relevant on its face, it is defendants' burden to establish lack of relevance.   Defendants have failed to meet their burden to show the information requested in Request No. 5 is irrelevant or of such marginal relevance that the potential harm of the discovery outweighs the presumption in favor of broad disclosure.   Nor have defendants shown that it would be unduly burdensome to produce these documents. Because the court finds the discovery sought relevant, the only remaining ground on which this discovery may be withheld is if defendants' confidentiality objection protects it from disclosure.

## 2.      Confidentiality

Defendants re-assert their objection that the documents sought are subject to confidentiality agreements.   Despite this objection, defendants insist that they have provided plaintiffs with all of the information concerning individual settlement awards, attorneys' fees, and costs deducted from each settlement in the Prudential litigation. Defendants provide no other argument or authority in support of this objection.

A general concern for protecting confidentiality does not equate to privilege.[36] Thus, information and documents are not shielded from discovery merely because they

---

[35] ECF doc. 231 at 13.

[36] *DIRECTV, Inc.*, 224 F.R.D. at 684-85 (citing *Sonnino*, 220 F.R.D. at 642).

are confidential.[37]   In the context of settlement agreements, the mere fact that the settling

parties agree to maintain the confidentiality of their agreement does not serve to shield

the agreement from discovery.[38]   In consideration of the foregoing, the court grants

plaintiffs' motion to compel with respect to Request for Production No. 5.

IT IS THEREFORE ORDERED:

1. Plaintiffs' motion to compel **(ECF doc. 224)** is granted in part and denied in

part.  All responsive documents that defendants have been ordered to produce shall be

served by **July 24, 2014**.

2. The parties shall bear their own expenses and attorney fees incurred in

connection with this motion.

Dated July 10, 2014, at Kansas City, Kansas.


  s/ James P. O'Hara
James P. O'Hara
U. S. Magistrate Judge

---

[37] *Id.*

[38] *Id.* (citing *Sonnino v. Univ. of Kan. Hosp. Auth.*, No. 02-2576, 2004 WL 769325, at *3 (D. Kan. Apr. 8, 2004)).