**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

WILLIAM J. SKEPNEK and
STEVEN M. SMOOT,

        **Plaintiffs,**

v.

ROPER & TWARDOWSKY, LLC and
ANGELA ROPER,

        **Defendants.**

**Case No. 11-CV-4102-DDC-JPO**

<u>**MEMORANDUM AND ORDER**</u>

This matter comes before the Court on defendants' Motion for Review (Doc. 166) of two Orders issued by Magistrate Judge O'Hara and plaintiffs' Motion for Leave to File Amended Complaint (Doc. 199). For the reasons explained below, the Court denies defendants' Motion for Review and denies plaintiffs' Motion for Leave to Amend.

This lawsuit stems from a dispute over an alleged attorney fee sharing agreement between plaintiffs William J. Skepnek and Steven M. Smoot and defendants Roper & Twardowsky, LLC and Angela Roper. Plaintiffs specialize in prosecuting legal malpractice actions. In 2001, defendant Roper contacted plaintiff Skepnek about an agreement that had been reached between Prudential Life Insurance Company of America, Inc. and New York law firm Leeds, Morelli & Brown to settle employment discrimination claims on behalf of 359 Prudential employees. In the fall of 2002, plaintiffs and defendants agreed to bring claims in New Jersey against Leeds, Morelli & Brown alleging malpractice arising out the Prudential settlement. The parties also agreed to handle the litigation jointly and to divide equally the legal fees collected. In 2010, the Prudential legal malpractice case settled. However, defendant Roper told plaintiff Skepnek that,

except for a small group of clients, plaintiffs were entitled to no portion of the fees because they had abandoned the cases.  On September 8, 2011, plaintiffs filed this lawsuit seeking to recover attorneys' fees allegedly owed them by defendants under the fee sharing agreement.

## I.   Defendants' Motion for Review (Doc. 166)

### A.   Background

Defendants' motion seeks review of Judge O'Hara's Orders compelling defendants to produce allegedly privileged client e-mails.

On February 8, 2013, plaintiffs served on defendants their Third Requests for Production of Documents.  Request Nos. 6, 7, 10, and 11 sought, among other things, all communications between defendants and several individuals, including Thomas O'Donnell and Schubert Jacques. O'Donnell and Jacques are New Jersey residents who at all times relevant to defendants' motion were clients of the defendant law firm Roper & Twardowsky.  Defendants objected that Request Nos. 6, 7, 10, and 11 sought documents protected by the attorney-client privilege, but served responses subject to their objections on March 11, 2013.

Plaintiffs found defendants' initial responses inadequate and asked defendants to perform an additional search for all e-mails responsive to plaintiffs' Third Requests for Production.  Defendants replied that the requested search was overbroad and would lead primarily to the discovery of irrelevant and unresponsive documents.  Defendants offered to perform the search, but only if plaintiffs would pay for the time involved.  Plaintiffs refused.

On September 6, 2013, plaintiffs filed a Motion to Compel (Doc. 114) responses to their Third Requests for Production.  Among other things, plaintiffs sought all electronic communications between defendant Roper or anyone else associated with Roper & Twardowsky and a list of fifteen people, including O'Donnell and Jacques.

Defendants filed an Opposition to plaintiffs' Motion to Compel and Cross-Motion for Protective Order (Doc. 124) on September 20, 2013.  Defendants argued that plaintiffs' motion should be denied because plaintiffs' requests were unduly burdensome, overly broad, and irrelevant, among other reasons.  In addition, defendants attached affidavits from O'Donnell and Jacques objecting to the disclosure of e-mail communications they had with defendants.  In an October 3, 2013 Order (Doc. 129), Judge O'Hara rejected defendants' arguments that the disputed discovery requests were overbroad and unduly burdensome.  Judge O'Hara granted plaintiffs' Motion to Compel and ordered defendants to "provide all electronic communications between Angela Roper, Kenneth Thyne or anyone else associated with Roper & Twardowsky, LLC and the fifteen individuals listed by defendants in their motion," including O'Donnell and Jacques, by October 18, 2013.[1]

Defendants requested, and received, two extensions of the deadline to comply with Judge O'Hara's Order.  On November 4, 2013, defendants' counsel e-mailed plaintiffs' counsel a "Dropbox" link which contained some, but not all, of the documents ordered to be produced. Notably, the e-mail stated, "Defendants are withholding as attorney client privilege all private email communications between Angela Roper and Ken Thyne and the clients," including O'Donnell and Jacques.[2]

On November 5, 2013, plaintiffs filed a Motion to Enforce the Court's Order on plaintiffs' Motion to Compel (Doc. 132), arguing that by withholding privileged documents, defendants were "flaunting the Court's Order and dragging the discovery of this case to a standstill."[3] Plaintiffs asked the court to "address under Rule 37(b) Defendants' failure to produce the docu-

---

[1] Doc. 129 at 11-12 (Order).

[2] Doc. 132-2 (Exhibit B to Motion to Enforce).

[3] Doc. 132 at 3 (Motion to Enforce Court's Order).

ments as instructed in the Court's order of October 3, 2013; and … consider other appropriate relief as it deems just and proper."[4]  In response (Doc. 134), defendants argued that Judge O'Hara's Order granting plaintiffs' Motion to Compel did not address the issue of privilege and never ordered production of *privileged* documents.  Defendants also provided plaintiffs with a privilege log of the e-mails they claimed as privileged.  Significantly, the privilege log contained only the name of the client who sent each e-mail, the size of each e-mail, and the date each withheld e-mail was sent.

On November 18, 2013, Judge O'Hara granted plaintiffs' Motion to Enforce (Doc. 139) and ordered defendants to produce all responsive documents by November 25, 2013, "regardless of 'privilege' …."[5]  Judge O'Hara found that defendants had failed to show that the withheld e-mails were privileged in their original objections and in response to plaintiffs' Motion to Compel because they did not meet their burden to show that the attorney-client privilege applied.  Judge O'Hara also explained that defendants should have described in detail the documents or information to be protected and provided precise reasons for their objection to discovery.  Judge O'Hara also held that defendants' privilege log was inadequate.  By failing to establish each element of the asserted privilege in their privilege log, Judge O'Hara found that defendants had waived the privilege.

Defendants filed a Motion for Reconsideration with Judge O'Hara (Doc. 146) on November 25, 2013, but provided no additional evidence in support of their privilege claims.  Judge O'Hara denied defendants' motion on December 11, 2013 (Doc. 163), writing that "defendants

---

[4] Doc. 132 at 3 (Motion to Enforce Court's Order).

[5] Doc. 139 at 8 (Order).

have *still* failed to meet their burden to support that privilege by making a clear showing that the privilege applies to their e-mail communications with two former clients."[6]

On December 18, 2013, defendants filed a Motion for Review of the Magistrate Judge's Order (Doc. 166), asking this Court to set aside the portions of Judge O'Hara's Orders compelling production of the allegedly attorney-client privileged e-mails.

### B.  Legal Standard

On nondispositive pretrial matters, a district court does not conduct a de novo review of the magistrate judge's order.  Instead, a district court applies a more deferential standard by which the moving party must show that the magistrate judge's order is "clearly erroneous or contrary to law." *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000); Fed. R. Civ. P. 72(a).  The clearly erroneous standard requires that the reviewing court affirm unless it, after reviewing all of the evidence, is left with the definite and firm conviction that a mistake has been committed. *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (internal quotation marks omitted).  The contrary to law standard permits the district court to conduct an independent review of purely legal determinations made by the magistrate judge. *Sprint Commc'ns Co. v. Vonage Holdings Corp.*, 500 F. Supp. 2d 1290, 1346 (D. Kan. 2007) (citations omitted).  A magistrate judge's order is contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Walker v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, No. 09–1316–MLB, 2011 WL 2790203, at *2 (D. Kan. July 14, 2011) (internal quotation marks omitted).  Harmless error by the magistrate judge does not warrant reversal. *See Riviera Drilling & Exploration Co. v. Gunnison Energy Corp.*, 412 F. App'x 89, 95 (10th Cir. 2011).

---

[6] Doc. 163 at 7 (Order).

### C.  Analysis

Defendants ask this Court to "set aside the portions of the [magistrate judge's] Orders holding the [defendants] waived the attorney-client privilege of [their] clients."[7]  Defendants argue specifically that certain e-mails between defendants and their clients Thomas O'Donnell and Schubert Jacques are protected by the attorney-client privilege and that Judge O'Hara erred by finding that defendants waived the privilege.

It is well settled that a party withholding documents as privileged has the burden to demonstrate the applicability of the privilege.  *E.g.*, *ERA Franchise Sys., Inc. v. N. Ins. Co. of N.Y.*, 183 F.R.D. 276, 278 (D. Kan. 1998).  Yet in the face of clear instructions by Judge O'Hara about the requirements to establish the basis for the attorney-client privilege and at least two explicit warnings that their showing was inadequate, defendants never met their burden.  As a result, Judge O'Hara ordered defendants to produce the allegedly privileged client e-mails.  Because Judge O'Hara's Orders compelling defendants to produce the O'Donnell and Jacques e-mails were not clearly erroneous, the Court denies defendants' Motion for Review.

#### 1.  Choice of Law

The Court first conducts a choice-of-law analysis to determine the appropriate attorney-client privilege law to apply to this dispute.  Defendants argue that because the e-mails at issue were written by New Jersey clients to their New Jersey lawyers about a New Jersey lawsuit, New Jersey attorney-client privilege law should apply.  While Judge O'Hara does not appear to have made an explicit choice-of-law selection, he seems to have applied federal common law of attorney-client privilege.

---

[7] Doc. 167 at 16 (Memorandum in Support of Motion to Review).

The Court's analysis begins with Federal Rule of Evidence 501 which provides the rule for determining which body of law governs matters of privilege:

> The common law—as interpreted by United States courts in light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
>
> - the United States Constitution
> - a federal statute; or
> - rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501.

The Court has subject matter jurisdiction over this lawsuit based on diversity of citizenship, and plaintiffs' Complaint brings claims for breach of contract, breach of fiduciary duty, and quantum meruit. Because state law provides the rule of decision for all of plaintiffs' claims, state law governs the application of the attorney-client privilege here. Fed. R. Evid. 501.

When Rule 501 requires application of state privilege law and there are factual connections to more than one state, federal courts engage in a choice-of-law analysis and employ the choice-of-law principles of the forum state. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); 2 Attorney-Client Privilege in the U.S. § 12:18 (2013). State courts generally use one of two basic choice-of-law approaches. The older, minority approach, is set forth by the Restatement (First) of Conflict of Laws and focuses on the location of a particular event. *See Aselco, Inc. v. Hartford Ins. Grp.*, 21 P.3d 1011, 1020 (Kan. Ct. App. 2001). The more modern approach follows the Restatement (Second) of Conflict of Laws, which directs courts to identify and apply the law of the most interested state. *See Tartaglia v. Paul Revere Life Ins. Co.*, 948 F. Supp. 325, 326 (S.D. N.Y. 1996) (holding that "New York choice of law gives controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or

parties, has the greatest concern with the specific issue raised in the litigation."). This "interests" analysis appears to be gaining increasing acceptance. *E.g.*, *People v. Thompson*, 950 P.2d 608, 611 (Colo. App. 1997); *State v. Eldrenkamp*, 541 N.W.2d 877, 881 (Iowa 1995); *State v. Lipham*, 910 A.2d 388, 392 n.3 (Me. 2006).

The Court has found no Kansas case that conducts a choice-of-law analysis specifically about evidentiary privileges.  However, Kansas is among those states that still follow the Restatement (First) of Conflict of Laws.  *ARY Jewelers, LLC v. Krigel*, 85 P.3d 1151, 1161-62 (Kan. 2004) ("When addressing choice of law issues, Kansas appellate courts still follow the Restatement (First) of Conflict of Laws (1934).").  Section 597 of the Restatement (First) of Conflict of Laws provides that "[t]he law of the forum determines the admissibility of a particular piece of evidence."  Thus, while there is no Kansas case directly on point, the Court concludes that the Kansas Supreme Court would apply Kansas state law to determine the applicability of the attorney-client privilege to the client e-mails at issue here.

The Court is aware that New Jersey clients communicating with their New Jersey law firm about a New Jersey lawsuit may find it unusual that Kansas state law determines whether their e-mails are privileged.  However, as discussed, the Court is bound to follow the privilege law it believes the Kansas Supreme Court would apply.  Thus, Judge O'Hara did not clearly err by declining to apply New Jersey law.

While Judge O'Hara may have applied federal common law instead of Kansas state law in conducting his privilege analysis, the two bodies of law do not appear to differ in any material respect.  In fact, as will be discussed below, the Kansas Supreme Court has cited with approval federal court discussions of the attorney-client privilege.  *See Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681, 693-94 (Kan. 2000) (quoting *ERA Franchise Sys., Inc. v. N. Ins.*

*Co. of N.Y.*, 183 F.R.D. 276, 278-79 (D. Kan. 1998)).  Thus, any error in his choice-of-law anal-

ysis is harmless and does not warrant reversal of his well-reasoned and careful analysis.

### 2.   Defendants Failed to Assert Attorney-Client Privilege

Kansas attorney-client privilege is codified by K.S.A. § 60-426 and provides in relevant

part:

> (a) *General rule.* Subject to K.S.A. 60-437, and amendments thereto, and except as oth-
> erwise provided by subsection (b), communications found by the judge to have been be-
> tween an attorney and such attorney's client in the course of that relationship and in pro-
> fessional confidence, are privileged, and a client has a privilege … (2) to prevent such
> client's attorney from disclosing it ….
>
> (b) *Exceptions.* …
>
> (c) *Definitions.* As used in this section … (2) "Communication" includes advice given by
> the attorney in the course of representing the client and includes disclosures of the client
> to a representative, associate or employee of the attorney incidental to the professional re-
> lationship.

K.S.A. § 60-426.

The Kansas Supreme Court fully endorsed Judge Rushfelt's discussion of the attorney-

client privilege in *ERA Franchise Sys., Inc. v. N. Ins. Co. of N.Y.*, 183 F.R.D. 276, 278-79 (D.

Kan. 1998).  *Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681, 693-94 (Kan. 2000).

Judge Rushfelt explained:

> Parties objecting to discovery on the basis of the attorney-client privilege bear the
> burden of establishing that it applies.  They must make a "clear showing" that the
> asserted objection applies.  To carry the burden, they must describe in detail the
> documents or information to be protected and provide precise reasons for the objec-
> tion to discovery. They must provide sufficient information to enable the court to
> determine whether each element of the asserted privilege is satisfied.  A claim of
> privilege fails upon a failure of proof as to any element.  A "blanket claim" as to
> the applicability of a privilege does not satisfy the burden of proof.

*ERA Franchise Sys.*, 183 F.R.D. at 278-79 (internal citations omitted).

At no point during the course of this lawsuit—from their objections to plaintiffs' discov-

ery requests on March 11, 2013 to their Motion for Review filed on December 18, 2013—have

defendants ever made a "clear showing" that the attorney-client privilege applies to their communications with O'Donnell and Jacques.  As Judge O'Hara wrote in his Order denying defendants' Motion for Reconsideration, "defendants have *still* failed to meet their burden to support that privilege by making a clear showing that the privilege applies to their e-mail communications with two former clients."[8]

Defendants' sole attempt to establish privilege is a privilege log they provided to plaintiffs after plaintiffs filed a Motion to Enforce Judge O'Hara's Order granting their Motion to Compel (Doc. 139).  However, the privilege log contains only the client name, the size of each e-mail, and the date when each withheld e-mail was sent.[9]  Judge O'Hara held that this "minimal description provided by defendants … falls short of carrying [their] burden of establishing that any privilege exists as to any documents in particular."[10]

The Court agrees with Judge O'Hara.  Defendants' half-hearted attempt at a privilege log—providing only the name of the sender and the size and date of the allegedly privileged e-mails—is exactly the type of "blanket claim" that will not satisfy defendants' burden "to provide sufficient information to enable the court to determine whether each element of the asserted privilege is satisfied."  *ERA Franchise Sys.*, 183 F.R.D. at 278-79.  Thus, Judge O'Hara's conclusion that defendants never established that the client e-mails are privileged was not "clearly erroneous."

---

[8] Doc. 163 at 7 (Order).

[9] Doc. 135-1 (Privilege Log).

[10] Doc. 139 at 9 (Order).

### 3.   Judge O'Hara Did Not Abuse His Discretion by Ordering Defendants to Produce the O'Donnell and Jacques Client E-mails

Having found that defendants failed to make the required showing that the O'Donnell and Jacques client e-mails were protected by the attorney-client privilege, Judge O'Hara ordered defendants to produce all e-mail communications between defendants and the two clients.

Defendants argue that Judge O'Hara erred in finding that defendants "waived" the attorney-client privilege.  It is true, as defendants argue, that under Kansas law, the privilege belongs to the client and "waiver of right to invoke privilege requires knowing and voluntary disclosure." *Cypress Media*, 997 P.2d at 693.  Defendants correctly point out that there is no evidence that O'Donnell or Jacques knowingly or voluntarily waived their privilege here—to the contrary, the two clients made clear their desire that the e-mails not be disclosed.

However, Judge O'Hara held that because defendants never properly supported their claim of privilege, they waived their ability to assert it.  Kansas law permits a finding of waiver in this context.  In *Cypress Media, Inc. v. City of Overland Park*, the Kansas Supreme Court held that a court may sanction a party who fails to assert the attorney-client privilege properly by ordering that party to produce the allegedly privileged documents. *Id.* at 696.  The defendant in *Cypress Media* submitted a privilege log "that amounted to nothing more than a blanket claim" which did not meet the defendant's obligation to establish privilege. *Id.* at 686.  Because the privilege log was inadequate, the trial court ordered the defendant to produce the purportedly privileged documents. *Id.*  On appeal, the Kansas Supreme Court affirmed the trial court, ruling that the decision "was a matter within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion." *Id.* at 696.  The Kansas Supreme Court went on to say that, while finding waiver of privilege without bad faith may sometimes be "unduly harsh," bad faith is not required for a court to apply the sanction. *Id.*

11

Here, Judge O'Hara repeatedly and accurately informed defendants of the "clear show-ing" they must make to establish the documents as privileged.  Judge O'Hara first discussed at-torney-client privilege in a February 2012 Order (Doc. 28).  Citing Fed. R. Civ. P. 26(b)(5), Judge O'Hara wrote that defendants bore the burden to establish privilege and must "describe the nature of the documents, communications, or tangible things not produced or disclosed" to claim privilege.[11]  Judge O'Hara warned that failing to assert the privilege may result in waiving the privilege.  The Kansas Supreme Court has endorsed the use of Fed. R. Civ. P. 26(b)(5) in resolv-ing privilege matters.  *Cypress Media*, 997 P.2d at 694 ("Although Kansas has not adopted [Fed. R. Civ. P. 26(b)(5)], it was not erroneous or an abuse of discretion for the trial court to require its usage in this case.").

Thus, when plaintiffs filed a Motion to Compel responses to their Third Requests for Production Nos. 6, 7, 10, and 11, defendants should have known about the privilege showing re-quired of them.  Plaintiffs' Motion to Compel sought to require defendants to conduct an e-mail search for all communications between defendants and O'Donnell and Jacques, among others.  Defendants objected that the requested search was unduly burdensome and would not lead to the discovery of admissible evidence, but did not make a detailed privilege objection.  Judge O'Hara rejected defendants' burden and relevance objections and ordered defendants to "provide all electronic communications between Angela Roper, Kenneth Thyne or anyone else associated with Roper & Twardowsky, LLC" and a list of individuals, including O'Donnell and Jacques.[12]

On November 4, 2013, defendants produced some but not all of the requested documents, sending an e-mail to plaintiffs that "[d]efendants are withholding as attorney-client privilege all

---

[11] Doc. 28 at 4 (Order).

[12] Doc. 129 at 11-12 (Order).

private email communications between Angela Roper and Ken Thyne and the clients."[13]  Plaintiffs quickly filed a Motion to Enforce the Court's Motion to Compel (Doc. 132), arguing that Judge O'Hara's Order on plaintiffs' Motion to Compel required defendants to produce responsive documents regardless of privilege.  In response, defendants argued that Judge O'Hara's Order on the Motion to Compel had no bearing on privilege.  In addition, defendants provided the above-discussed privilege log.

Judge O'Hara ruled that defendants had waived the attorney-client privilege because defendants had "failed to meet their burden to show that [the O'Donnell and Jacques e-mails] are privileged attorney-client communications at every phase of this litigation."[14]  Specifically, Judge O'Hara found that the privilege log defendants submitted was inadequate and defendants otherwise had failed to support the privilege in their original discovery objections and in response to plaintiffs' Motion to Compel.  As a result, Judge O'Hara ordered defendants to "produce *all* responsive documents in accordance with the court's October 3, 2013 order regardless of 'privilege' ...."[15]

In their Motion for Review before this Court, defendants argue that Judge O'Hara erred by finding that defendants should have supported the existence of the privilege with specific evidence in their Opposition to plaintiffs' September 6, 2013 Motion to Compel.  Defendants claim that they could not have made the required privilege showing because the issue presented by the Motion to Compel was whether defendants had to conduct an additional e-mail search to respond adequately to plaintiffs' Third Requests for Production.  According to defendants, before Judge O'Hara's Order compelling defendants to conduct the e-mail search, defendants did not know

---

[13] Doc. 132-2 (Exhibit B to Motion to Enforce).

[14] Doc. 139 at 8 (Order).

[15] Doc. 139 at 8 (Order).

what documents the search would uncover and therefore could not have made a detailed showing that the privilege applied.

However, Judge O'Hara's conclusion that defendants waived the privilege did not rely on defendants' failure to assert the privilege in response to plaintiffs' Motion to Compel.  Rather, Judge O'Hara ruled that defendants failed to meet their burden at "every phase of this litigation."[16]  Judge O'Hara faulted defendants because, even after defendants performed the additional e-mail search and, therefore, could evaluate which e-mails were privileged, they failed to make an adequate showing of privilege.  Over the entire course of this litigation, defendants' lone attempt to establish that the client e-mails were privileged was to provide an inadequate privilege log.

Judge O'Hara's November 18, 2013 Order explicitly informed defendants that they had not met their burden to establish that a privilege existed, yet defendants have done nothing to supplement their claims.  Defendants filed a Motion for Reconsideration of the Magistrate Judge's Order (Doc. 146) on November 25, 2013, but did not amend their privilege log or provide any additional information to substantiate their attorney-client privilege claims.  In denying defendants' Motion for Reconsideration, Judge O'Hara wrote that "defendants have *still* failed to meet their burden to support that privilege by making a clear showing that the privilege applies to their e-mail communications with two former clients."[17]

The Order denying defendants' Motion for Reconsideration—Judge O'Hara's fourth warning to defendants about the privilege requirements—has not spurred defendants to supplement their privilege log.  Defendants filed a Motion for Review of Judge O'Hara's privilege Or-

---

[16] Doc. 139 at 8 (Order).

[17] Doc. 163 at 7 (Order).

ders (Doc. 166), but never have provided any additional evidence to show that the O'Donnell and Jacques e-mails are privileged.

In sum, defendants repeatedly have ignored Judge O'Hara's instructions about the required showing to assert the attorney-client privilege and passed over several opportunities to strengthen their showing that the O'Donnell and Jacques e-mails are privileged.  Because defendants failed to meet their burden on privilege at "every phase of this litigation," Judge O'Hara ordered defendants to produce the e-mails, regardless of privilege.  Such a sanction is permitted under Kansas law, even in the absence of bad faith.  *Cypress Media*, 997 P.2d at 696.  Thus, the entire evidence has not left the Court "with the definite and firm conviction that a mistake has been committed."  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988).  The Court denies defendants' Motion for Review.

## II.  Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 199)

On April 14, 2014, plaintiffs filed a Motion for Leave to File Amended Complaint.  Plaintiffs' motion is well out of time:  the deadline for amending the pleadings passed on May 24, 2013.  As a result, the Court must analyze plaintiffs' motion under the two-step test courts in this district use to decide motions to amend pleadings after the scheduling order deadline.  *E.g.*, *Capital Solutions, LLC v. Konica Minolta Bus. Solutions U.S.A., Inc.*, No. 08-2027, 2009 WL 1635894, at *3 (D. Kan. June 11, 2009).

Although Fed. R. Civ. P. 15 provides that courts should "freely" grant leave to amend when justice so requires, a motion to amend filed after the scheduling order deadline implicates Fed. R. Civ. P. 16 as well.  Under Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  As a result, when confronted with a motion to amend filed beyond the scheduling order deadline, courts in this district first evaluate

whether the moving party has established "good cause" within the meaning of Rule 16(b)(4).

*E.g.*, *Carefusion 213, LLC v. Prof'l Disposables, Inc.*, No. 09-2616, 2010 WL 4004874, at *3 (D. Kan. Oct. 12, 2010).  Only after determining that good cause has been established will the Court proceed to determine whether the movant has satisfied the more forgiving Rule 15(a) standard. *Id.*

To establish good cause under Rule 16(b)(4), the moving party must show that it could not have met the amendment deadline even if it had acted with due diligence.  *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995).  "Carelessness is not compatible with a finding of diligence and offers no reasons for a grant of relief."  *Id.*  Furthermore, the lack of prejudice to the nonmovant does not show "good cause."  *Id.*  A district court's determination about whether a party has established good cause sufficient to modify a scheduling order amendment deadline is within the court's discretion and is reviewed only for an abuse of discretion.  *Carefusion 213*, 2010 WL 4004874, at *3.

Plaintiffs' proposed Amended Complaint adds claims of fraud, tortious interference with contract, and punitive damages against defendants.  Plaintiffs filed their Motion for Leave to Amend on April 18, 2014, nearly a year after the May 24, 2013 Scheduling Order deadline. Thus, plaintiffs must demonstrate that they could not have met the May 24, 2013, deadline even if they had acted with due diligence.  *Deghand*, 904 F. Supp. at 1221.  The Court finds that plaintiffs have not met their burden.

First, plaintiffs' Motion for Leave to Amend fails to apply the two-step analysis used by courts in this district to decide whether to grant leave to amend pleadings after the scheduling order deadline.  Plaintiffs' motion makes no mention of Fed. R. Civ. P. 16 and instead focuses entirely on the more lenient Rule 15 standard.  Plaintiffs' primary argument in their motion is

that defendants will not suffer "undue prejudice" if the Court grants leave to amend.  However, lack of prejudice to the nonmovant does not show "good cause."  *Id.*

Plaintiffs do assert that they "have discovered additional evidence supporting their claims through discovery, document productions and recent depositions,"[18] which the Court will construe as an attempt to show that plaintiffs could not have met the May 24, 2013, deadline even if they had acted with due diligence.  Yet, plaintiffs specifically identify only one piece of information that they allegedly learned after the scheduling order deadline.  Namely, plaintiffs claim that during Kenneth Thyne's March 13, 2014 deposition, Thyne testified that he told the parties' joint clients in the Prudential legal malpractice litigation that plaintiffs had abandoned their case.  Thyne is a lawyer at defendant Roper & Twardowsky, who worked on the Prudential legal malpractice litigation.  Plaintiffs allege that "it wasn't until the March 2014 deposition of Kenneth Thyne that Plaintiffs first learned that Defendants had been falsely and tortiously telling joint clients that Plaintiffs had abandoned the case."[19]

The problem with plaintiffs' argument, however, is that plaintiffs' fraud and tortious interference claims do not depend on the allegedly new information revealed at Thyne's deposition.  Rather, plaintiffs pleaded facts in their original Complaint that they now use to support their proposed amended claims.  Plaintiffs allege that defendants committed fraud by "actively obstructing and preventing Plaintiffs from performing their agreement"[20] and that defendants tortiously interfered with their contract by "actively obstructing [Plaintiffs'] efforts to litigate the case on behalf of the clients, and preventing Plaintiffs from pursuing the litigation."[21]  However,

---

[18] Doc. 199 at ¶ 2 (Motion for Leave to File Amended Complaint).

[19] Doc. 216 at 3 (Reply in Support of Motion for Leave to Amend).

[20] Doc. 199-1 at ¶ 96 (Proposed Amended Complaint).

[21] Doc. 199-1 at ¶ 98 (Proposed Amended Complaint).

plaintiffs' original Complaint alleges that defendants "breached their fiduciary obligations" "by interfering with and preventing Plaintiffs from pursuing the litigation."[22]  Thus, the same allegation in the original Complaint—that defendants obstructed plaintiffs' ability to pursue the litigation underlying this lawsuit—gives rise to the fraud and tortious interference claims in the proposed Amended Complaint.  While the information learned in the Thyne deposition may bolster the fraud and tortious interference allegations, it was not necessary to plead the two claims.

Furthermore, plaintiffs essentially admit that they could have pleaded their amended claims in their original Complaint.  Plaintiffs' motion states that that "the subject matter of the amendments was always alleged in the complaint and answer thereto."[23]  Because plaintiffs had sufficient information to plead their fraud and tortious interference claims originally, plaintiffs cannot meet the "good cause" standard required for amendment at this stage.  Plaintiffs could have pleaded their fraud and tortious interference claims in their original Complaint.

Plaintiffs also seek leave to add a punitive damages claim which states:  "Defendants' conduct breached fiduciary duties, was deceptive, deceitful and fraudulent, as well as willful, knowing and malicious."[24]  Plaintiffs bear the burden of showing good cause to amend, but fail to show how the information learned at the Thyne deposition gives rise to a punitive damages claim.  As a result, the Court is left to guess how Thyne's testimony purportedly supports a punitive damages claim.  This does not satisfy plaintiffs' burden.

In sum, the Court finds that plaintiffs failed to meet their burden to demonstrate good cause for filing its Motion to Amend nearly a year after the amendment deadline.  The Court therefore need not reach the second step of the inquiry, *i.e.* whether plaintiffs have satisfied the

---

[22] Doc. 1 at ¶ 60 (Complaint).

[23] Doc. 199 at ¶ 7 (Motion to File Amended Complaint).

[24] Doc. 199-1 at ¶ 99 (Proposed Amended Complaint).

more forgiving Fed. R. Civ. P. 15 standard for leave to amend.  The Court denies plaintiffs' Motion for Leave to Amend.

      **IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Review (Doc. 166) is denied.  Defendants' Motion for Partial Stay of the December 11, 2013 Order (Doc. 165) is denied as moot.

      **IT IS FURTHER ORDERED BY THE COURT THAT** plaintiffs' Motion for Leave to File Amended Complaint (Doc. 199) is denied.

      **IT IS SO ORDERED.**

      **Dated this 4th day of September, 2014, at Topeka, Kansas.**

                                  **s/ Daniel D. Crabtree**
                                  **Daniel D. Crabtree**
                                  **United States District Judge**