UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIAM J. SKEPKEK and
STEVEN M. SMOOT,

                Plaintiffs,

v.                                        Case No. 11-4102-DDC

ROPER & TWARDOWSKY, LLC and
ANGELA ROPER,

                Defendants.

## ORDER

This case is before the undersigned U.S. Magistrate Judge, James P. O'Hara, on defendants' motion to compel **(ECF doc. 246)**. Specifically, defendants move to compel plaintiffs to produce "full and complete discovery responses" to defendants' second set of interrogatories. For the reasons discussed below, defendants' motion is granted in part and denied in part.

On September 26, 2014, defendants served their second set of interrogatories.[1] Plaintiffs served their responses on October 28, 2014.[2] Defendants made six requests in

---

[1] ECF doc. 240.

[2] ECF doc. 243.

their second set of interrogatories, three of which defendants now ask for "complete" responses.[3]

Fed. R. Civ. P. 26(b)(1) currently provides that generally the scope of discovery is limited to the parties' pleaded claims and defenses, but that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." When a party files a motion to compel and asks the court to overrule objections, the objecting party must specifically show in its response to the motion how each discovery request is objectionable.[4] Objections initially raised but not supported in response to the motion to compel are deemed abandoned.[5] However, if discovery requests appear facially objectionable in that they are overly broad or seek information that does not appear relevant, the burden is on the movant to demonstrate how the requests are not objectionable.[6] With these standards in mind, the court addresses plaintiffs' objections and responses to the disputed requests.

Interrogatory No. 3. Interrogatory No. 3 asks plaintiffs to state with particularity all conditions precedent to receive compensation under the parties' alleged contract as referenced in paragraph 57 of plaintiffs' complaint and how and when each condition

---

[3] Specifically, Interrogatory Nos. 3, 4, and 5.

[4] *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670-71 (D. Kan. 2004).

[5] *In re Bank of Amer. Wage & Emp't Practices Litig.*, 275 F.R.D. 534, 538 (D. Kan. 2011).

[6] *Id.*

precedent was fulfilled by plaintiffs.[7] For each such condition precedent, defendants asked plaintiffs to identify the specific provision of the "Fee Division Agreement" that applies and to identify any documents by Bates number that supports the foregoing. In response, plaintiffs initially objected that the interrogatory was overly broad, burdensome, and asked and answered in a deposition "where the nature of the agreement between the parties was testified to, as well as the tasked performed under the joint venture agreement."[8] Plaintiffs explained that the request is overly broad and burdensome because it would be "impossible to list out all of Plaintiffs' activities in the Prudential matter over the years 2005-2011."[9] For example, plaintiffs state that there were "hundreds of emails and telephone conversations alone."[10]

Purportedly without waiving those objections, plaintiffs further responded that they performed their contractual obligations entitling them to recovery by "representing all of the clients in the Prudential matter to the best of [their] abilities either through the legal work [they] did perform, or tried to perform, but were not allowed because of the deceit of the Defendants."[11] Additionally, plaintiffs quoted William Skepnek's

---

[7] *See* ECF doc. 253-2 at 8.

[8] *Id*.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 9.

testimony, in which he described that the agreement between the parties called for a general division of labor as follows:

> I would be the person who would take the lead in taking the core depositions of the Prudential people and the Leeds, Morelli people, and that I would take the lead in various hearings. That Mr. Smoot and I would develop the theories and draft the important pleadings relating to the prosecution of our claims.[12]

Plaintiffs also directed defendants to their answers to Interrogatory Nos. 1 and 2 in which they outline the activities undertaken and the means by which they were allegedly prevented from performing the tasks that they intended to do. Plaintiffs conclude that to list all of these tasks would be "a monumental task and overly burdensome as [their] activities in this file span approximately six years."[13]

Dissatisfied with plaintiffs' response, defendants assert that they are entitled to know what specific work was required under the alleged contract and what work plaintiffs contend they actually performed under the contract. Defendants explain that they served this interrogatory because plaintiffs' pleadings and depositions only provided "vague conflicting generalizations" about the work required under the contract.[14] And, defendants point to contradictions between Mr. Smoot and Mr. Skepnek's deposition testimony as support. Specifically, defendants assert that although both Mr. Smoot and Mr. Skepnek agree that a December 2, 2002 letter memorialized the terms of the parties'

---

[12] *Id.* (citing Deposition of William J. Skepknek, Vol. 2, p. 140, ll. 9-16).

[13] *Id.*

[14] ECF doc. 247 at 3.

contract, Mr. Skepnek testified that there were additional terms created by an oral agreement. Defendants assert that Mr. Smoot's testimony contradicted Mr. Skepnek's and differed widely on the understanding of any contract between the parties. Defendants insist that they are entitled to know the scope of plaintiffs' responsibilities under the contract and what proof plaintiffs will present at trial to show that they complied with their obligations under the contract.

In response to defendants' motion, plaintiff's provided a "further response" to Interrogatory No. 3. Plaintiffs explain that they read Interrogatory Nos. 2[15] and 3 as asking for each and every task they performed under a fee splitting arrangement that lasted eight years and required nine banker's boxes of legal files to house the documents, pleadings, and communications. Plaintiffs maintain that to list each and every task they undertook to "represent a multitude of clients over eight years would be a tremendously burdensome task." Plaintiffs provided affidavits from Mr. Smoot and Mr. Skepnek in support of this objection. Despite their objections, plaintiffs contend that they attempted in a good faith manner to provide truthful, reasonable, and useful responses. Plaintiffs assert they did so by providing defendants with Mr. Skepnek's testimony on the agreed-

---

[15] Interrogatory No. 2 asks plaintiffs to "State with particularity any and all contractual duties required of Plaintiff under the alleged contract, as referenced in paragraph 57 of the Complaint, and how and when each contractual duty was fulfilled by Plaintiff. For each contractual duty set forth, identify the specific provision of the Fee Division Agreement setting forth same and identify any document by bates number which allegedly supports Plaintiff's claim about how and when each contractual duty was fulfilled by Plaintiff." ECF doc. 252-2 at 4.

upon division of labor between the parties and an affirmation by plaintiffs that they lived up to the agreement through their activities on the file and their willingness to do more, if allowed.

As mentioned earlier, plaintiffs explain that their answer to Interrogatory No. 3 incorporated their responses to Interrogatory Nos. 1 and 2.  In response to Interrogatory No. 1, plaintiffs provided detail with specific references to documents regarding communications between the parties in which plaintiffs offered to take depositions, argue motions, and meet with co-counsel and clients.[16]  Plaintiffs state that their response to Interrogatory No. 2 is even more expansive detailing what plaintiffs' representation of the Prudential clients entailed.  Plaintiffs assert they provided a detailed narrative to create a chronology of their activities and also provided numerous deposition citations to their testimony in which they explained their activity on the Prudential file.[17]  Plaintiffs conclude that their response to this interrogatory provides defendants with an "abundance of evidence" to show what plaintiffs did to fulfill the terms of the agreement.  Therefore, plaintiffs insist defendants' motion to compel should be denied.

In their reply, defendants argue that the information requested in Interrogatory No. 3 is necessary for plaintiffs to sustain their breach of contract and quantum meruit claims.  Defendants describe plaintiffs' response as only a general description of what the

---

[16] *See* ECF doc. 253-2 at 2-4.

[17] *See Id.* at 5-8.

plaintiffs would have done, but never did, which defendants assert is not responsive to this request. Defendants re-assert that plaintiffs claim of undue burden is outweighed by the benefit it would provide by allowing defendants to defend against their claims. And defendants assert that plaintiffs' reference to "nine banker's boxes" and their failure to set forth which work each plaintiff provided to which clients under the contract prevents defendants from defending against plaintiffs' claims.

As the party resisting discovery, plaintiffs have the burden to show facts demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.[18] The objecting party must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, the discovery requests are overly broad or unduly burdensome by submitting affidavits or offering evidence revealing the nature of the burden.[19]

In support of their objections, plaintiffs submitted their own affidavits. Mr. Skepnek stated that he has been deposed in this case for almost two days and has testified about the activities he performed over an eight year period for Prudential clients.[20] In addition, Mr. Skepnek declared that his files are voluminous and he has produced more

---

[18] *General Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 641 (D. Kan. 2003) (citing *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002)).

[19] *DIRECTV, Inc.*, 224 F.R.D. at 688 (citing *Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 672 (D. Kan. 2003)).

[20] *See* ECF doc. 254-1.

than four banker's boxes containing thousands of documents including e-mails, letters, notes, motions, pleadings, briefs, and more. Mr. Skepnek explained that he objected to this request as overly burdensome because it would require him to reconstruct each and every action he took with regard to the Prudential litigation. To do so, Mr. Skepnek asserts that it would require countless hours. Mr. Skepnek states that he has set out the general division of labor between the parties to respond to defendants' inquiry as to his role in the case. Additionally, Mr. Skepnek responds that his response to Interrogatory No. 3 incorporated his answers to Interrogatory Nos. 1 and 2, in which he provided the principle or material activities he performed in the Prudential case.

In Mr. Smoot's affidavit, he states that he interpreted Interrogatory No. 3 to require him to recite every single thing he ever did on the Prudential cases to support his claim that he performed contractual duties. Mr. Smoot explained that to reconstruct from his file every action he took over a period of many years would be "beyond onerous."[21] Mr. Smoot asserts that he would have to go through several thousand pages of documents and articulate what each document meant and what he did in relation to that document. Mr. Smoot reiterates that his duties included traveling to defendants' office on many occasions to review client documents, meet with clients and potential clients, meet with other lawyers, work on pleadings and discovery requests, respond to motions, and attend

---

[21] ECF doc. 254-2.

O:\ORDERS\11-4102-DDC-246.docx

8

hearings. Mr. Smoot insists that his answer to defendants' second set of interrogatories set forth what he did in the Prudential case, as requested.

The court has reviewed plaintiffs' discovery responses to defendants' Interrogatory No. 3, along with plaintiffs' affidavits, and finds that plaintiffs have provided a sufficient answer and response to this discovery request. Interrogatory No. 2 already asked plaintiffs to "State with particularity any and all *contractual duties* required of Plaintiff under the alleged contract, as referenced in Paragraph 57 of the Complaint, and how and when each contractual duty was fulfilled by Plaintiff." And for each contractual duty set forth, "identify the specific provision of the Fee Division Agreement setting forth same and identify any document by bates number which allegedly supports Plaintiff's claim about how and when each contractual duty was fulfilled by Plaintiff."[22] Plaintiffs responded and provided detailed citations to deposition testimony regarding their performance of duties under the contract. Defendants did not move to compel a further response to this request. Interrogatory No. 3 is almost identical to No. 2 except that it substitutes "condition precedent" for "contractual duty." Nonetheless, plaintiffs provided an answer to Interrogatory No. 3 and supplemented that answer in their response to defendants' motion.

Defendants' motion complains that plaintiffs' depositions and pleadings "could hardly name any clients [plaintiffs] allegedly represented let alone any services provided

---

[22] ECF doc. 253-2 at 5.

by Plaintiffs."[23]  Defendants also insist that they would expect to receive detailed information supporting "$8 Million worth or work provided on behalf of specific clients."[24]  In their reply, defendants reiterate that they are entitled to know "what work Plaintiffs claim to have performed on behalf of the clients for which they have already received fees, as well as claimed in this case."[25]  Defendants assert that plaintiffs' responses "doom" their claims.

Defendants appear to take issue with the content of plaintiffs' responses rather than their failure to adequately respond.  Plaintiffs have provided defendants with an adequate response to Interrogatory No. 3.  If defendants think plaintiffs' evidence is insufficient or their theories unmeritorious, those are issues that may be taken up during dispositive motions or at trial upon cross-examination of Messrs. Skepnek and Smoot.  For plaintiffs to further answer this request by listing each and every task performed under the contract over a six-year period would be unnecessary and unduly burdensome.  Therefore, defendants' motion to compel a "complete response" to Interrogatory No. 3 is denied.

<u>Interrogatory No. 4.</u>  Interrogatory No. 4 asks for a detailed computation of the amount plaintiffs allege they are owed, and/or the contract performance or benefit plaintiffs believe they are entitled to but have not yet received. Defendants ask plaintiffs

---

[23] ECF doc. 247 at 3.

[24] *Id.*

[25] ECF doc. 257 at 2.

to identify all documents by Bates number that support this calculation or disclosure. Plaintiffs responded that they are entitled to "approximately $8 million, which is 50% of the fees that Roper & Twardowsky received in the total settlement of the Prudential litigation (which amounted to two separate settlements)."[26] Plaintiffs explain that this computation is based off of the chart from the "Notice of Settlement," which they compared to settlement agreements provided by defendants. Plaintiffs assert that this figure is also computed from the chart provided by defendants and the deposition testimony of defendant Angela Roper. Plaintiffs provide specific Bates-number references and deposition citations in support of their calculation.

In their motion, defendants argue that plaintiffs have provided "no more than a vague and speculative 'approximation of damages' of $8 Million dollars with no explanation or foundation for how such number was determined."[27] Defendants assert that plaintiffs' response ignores the "massive amount of financial discovery they requested and received."[28] Defendants contest the veracity of plaintiffs' calculation and claim that their damages number has no foundation.

Plaintiffs assert that their response to Interrogatory No. 4 explains how they have calculated their damages in two separate ways and provides foundational documents to support those calculations. Nonetheless, plaintiffs further responded to this request in

---

[26] ECF doc. 253-2 at 11.

[27] ECF doc. 247 at 4.

[28] *Id.*

their response to defendants' motion by providing a more detailed explanation of their calculations with the supporting documents attached as exhibits.

Defendants' reply denies the accuracy of plaintiffs' calculation. Defendants inform the court that they believe plaintiffs' damages claim is too speculative and they plan to file a dispositive motion on this point. Yet, defendants still move to compel a "coherent" computation of damages by plaintiffs.

Similar to defendants' argument regarding Interrogatory No. 3, defendants' motion contests the *merit* of plaintiffs' response rather than the responsiveness. The court finds that plaintiffs have adequately responded to Interrogatory No. 4. There is no need for plaintiffs to respond any further to this request. Any issues defendants have with the truth or plausibility of plaintiffs' damages calculation may be addressed in a dispositive motion or before the finder of fact at trial. Defendants' motion to compel a "coherent" response to Interrogatory No. 4 is denied.

Interrogatory No. 5. Interrogatory No. 5 asks plaintiffs to describe all efforts undertaken to mitigate their damages. Plaintiffs responded that they were "unaware of any action that [] they could possibly have taken to mitigate damages in view of how Roper precluded their willing and contractual involvement in the litigation without ever telling them so and proceeded to sell the case to Steve Snyder and otherwise settle the matter out from under Plaintiffs."[29] This answer is not responsive and argumentative.

---

[29] ECF doc. 253-2 at 11.

Plaintiffs should have either listed what efforts they made to mitigate their damages or stated that they made none.  If plaintiffs choose to add a non-argumentative explanation as to why they made no efforts to mitigate their damages or why they took the actions that they did, so be it.  However, their current response is inadequate to address the question posed.  Therefore, plaintiffs are ordered to supplement their response to *directly* answer the question posed.  Plaintiffs shall provide defendants with their supplemental response to Interrogatory No. 5 by **January 16, 2015.**

IT IS THEREFORE ORDERED:

1. Defendants' motion to compel **(ECF doc. 246)** is granted in part and denied in part.

2. The parties shall bear their own expenses and attorney fees incurred in connection with this motion.

Dated January 6, 2015 at Kansas City, Kansas.

 s/ James P. O'Hara  
James P. O'Hara  
U. S. Magistrate Judge

O:\ORDERS\11-4102-DDC-246.docx