IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIAM J. SKEPNEK and
STEVEN M. SMOOT,

 Plaintiffs,

v.

ROPER & TWARDOWSKY, LLC,

 Defendant.

Case No. 11-04102-DDC

## MEMORANDUM AND ORDER

  This action arose from a fee dispute between plaintiffs, attorneys William Skepnek and Steven Smoot, and defendant, a law firm named Roper & Twardowsky, LLC. Following a jury verdict in plaintiffs' favor, defendant moved for judgment as a matter of law or, alternatively, for a new trial or remittitur. Doc. 372. In its Memorandum supporting that motion, defendant asserts separate arguments supporting each outcome. Doc. 373. This order rules on all those arguments in the order they are presented, and for reasons explained below, denies defendant's motion.

**I. Motion for Judgment as a Matter of Law**

  Defendant asserts it is entitled to judgment as a matter of law because plaintiffs failed to provide evidence about the number of hours they worked or their hourly rates; plaintiffs failed to provide expert testimony about the quality of their services and failed to show that their efforts contributed to the advancement of the case; and Mr. Smoot did not testify. Doc. 373 at 1. None of these arguments supports judgment in defendant's favor as a matter of law.

### A. Legal Standard

If a court does not grant a motion for judgment as a matter of law under Rule 50(a), the movant may file a renewed motion for judgment as a matter of law. Fed. R. Civ. P. 50(b). The Tenth Circuit has instructed district courts to grant renewed motions for judgment as a matter of law "cautiously and sparingly." *Zuchel v. City & Cty. of Denver*, 997 F.2d 730, 734 (10th Cir. 1993). "Movants are entitled to judgment as a matter of law only if all of the evidence, viewed in the light most favorable to the nonmoving party, reveals no legally sufficient evidentiary basis to find for the nonmoving party." *Weichert v. E-Fin. Call Ctr. Support*, No. CV 13-2493-KHV, 2016 WL 1273922, at *2 (D. Kan. Mar. 30, 2016); *see also Burrell v. Armijo*, 603 F.3d 825, 832 (10th Cir. 2010). "Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences to support the nonmoving party." *Weichert*, 2016 WL 1273922, at *2; *see also Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Riggs v. Scrivner, Inc.*, 927 F.2d 1146, 1149 (10th Cir.), *cert. denied*, 502 U.S. 867 (1991). "Such judgment is proper only when 'the evidence so strongly supports an issue that reasonable minds could not differ.'" *Weichert*, 2016 WL 1273922, at *2 (quoting *Ryder v. City of Topeka*, 814 F.2d 1412, 1418 (10th Cir. 1987)). "In determining whether to grant judgment as a matter of law, the Court may not weigh the evidence, consider the credibility of witnesses or substitute its judgment for that of the jury." *Id.*; *see also Lucas v. Dover Corp.*, 857 F.2d 1397, 1400 (10th Cir. 1988). "Nevertheless, the Court must find more than a mere scintilla of evidence favoring the nonmovant; the Court must find that 'evidence was before the jury upon which it

could properly find against the movant.'" *Weichert*, 2016 WL 1273922, at *2 (quoting *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir. 1988)).

B.     **Time and Hourly Rate**

Defendant first contends that it is entitled to judgment as a matter of law because plaintiffs failed to provide evidence showing the number of hours they worked or their hourly rates. Doc. 373 at 9–11. Defendant contends, "New Jersey law makes clear that when an attorney does not cede a substantially prepared case, did not originate the case, or had not obtained a settlement offer that the lawyer's standard hourly rate is the most that can be recovered." Doc. 373 at 9.

This argument, in large measure, reprises a theory that the court rejected long ago. *See* Doc. 293 at 35 (Memorandum and Order of July 23, 2015 denying summary judgment against plaintiffs' *quantum meruit* claim and rejecting defendant's argument that "the court must grant summary judgment unless plaintiffs present evidence of the hours they spent representing each Prudential client."). As the court explained at summary judgment, "time [spent] is not the only factor to be used in ascertaining a reasonable fee. . . ." *Id.* (citing *Buckelew v. Grossbard*, 461 A.2d 590, 592 (N.J. Super. Ct. Law Div. 1983), *aff'd* 469 A.2d 518 (N.J. Super. Ct. App. Div. 1983). The court again rejects defendant's characterization of New Jersey law governing *quantum meruit* principles, as applied to attorney fee disputes.

"The proper measure of compensation under *quantum meruit* is 'as much as is deserved.'" *Bruno v. Gale, Wentworth & Dillon Realty*, 852 A.2d 198, 201 (N.J. Super. Ct. App. Div. 2004). *Quantum meruit* is an equitable remedy[1] so a "mere listing of hours expended is insufficient" because it may lead to an inequitable result. *Id.* "The crucial factor in determining

---

[1]    While equitable in character, New Jersey law provides that *quantum meruit* claims are triable to a jury. *See* Doc. 405 at 2–3 (citing *Goldberger, Seligsohn & Shinrod, P.A. v. Baumgarten*, 875 A.2d 958, 964 (N.J. Super. Ct. App. Div. 2005)).

3

the amount of recovery is the contribution which the lawyer made to advanc[e] the client's cause." *Id.*; *see also Glick v. Barclays DeZoete Wedd, Inc.,* 692 A.2d 1004, 1010 (N.J. Super. Ct. App. Div. 1997); *Dinter v. Sears, Roebuck & Co.,* 651 A.2d 1033, 1038 (N.J. Super. Ct. App. Div. 1995), *cert. denied,* 658 A.2d 728 (N.J. 1995); *La Mantia v. Durst*, 561 A.2d 275, 277 (N.J. Super. Ct. App. Div. 1989), *cert. denied,* 570 A.2d 950 (N.J. 1989); *Anderson v. Conley,* 501 A.2d 1057, 1067 (N.J. Super. Ct. Law Div. 1985); *Buckelew,* 461 A.2d at 591–92.

Both defendant and plaintiffs cite *La Mantia v. Durst* as authority favoring them. Doc. 373 at 9; Doc. 405 at 3. In *La Mantia*, the New Jersey Superior Court observed "that when dealing with an equitable determination such as *quantum meruit*, hard and fast rules are difficult to apply, let alone construct." 561 A.2d at 277. But, the New Jersey courts developed guidelines that this court found useful to its analysis of the *quantum meruit* claim asserted here. *Id.* at 278. These guidelines identify the following seven factors: the length of time invested by the claimant compared to the entire time expended; the quality of representation; the result of each attorney's efforts; the reason the client changed attorneys; the viability of the claim at transfer; the amount of recovery realized; and any pre-existing partnership agreements between the attorneys who now compete for a percentage of the contingency fee. *Id.* Although not all the factors apply to this dispute, they provide a clear message for the defendant's argument. Under New Jersey law, an hourly rate-based calculation alone is inadequate. In fact, the New Jersey courts have found that applying a purely hourly calculation was reversible error. *Id.*

Fifteen years after the *La Mantia* court collected these seven factors, the New Jersey Superior Court affirmed its confidence in them in *Bruno v. Gale, Wentworth & Dillon Realty*. 852 A.2d at 201 ("Trial courts should consider the length of time each of the firms spent on the case relative to the total amount of time expended to conclude the client's case. The quality of

4

that representation is also relevant. . . . Viability of the claim at transfer also bears upon the value of a former firm's contribution . . . The amount of the recovery realized in the underlying lawsuit also impacts upon the quantum meruit valuation." (quoting *La Mantia*, 561 A.2d at 278 (other citations omitted))).

Defendant directs the analysis to two more cases that purportedly require plaintiffs, as a condition to *quantum meruit* recovery, to reconstruct time records and produce those records in discovery, or testify about them to the jury. Doc. 373 at 11; Doc. 408 at 5–6 (first citing *Starkey, Kelly, Blaney & White v. Estate of Nicolaysen*, 796 A.2d 238 (N.J. 2002); then citing *Szcepanski v. Newcomb Med. Ctr., Inc.*, 661 A.2d 1232 (N.J. 1995)). But, defendant's cases are not on point. Neither one deals with a *quantum meruit* fee dispute between attorneys. And while both cases reach tangentially-related issues,[2] *La Mantia* and *Bruno* consider the same setting presented in this case—a *quantum meruit* fee dispute between counsel sharing a common client. For this reason, the court concludes that the *La Mantia* factors control the analysis here and considers whether the evidence will support the jury's verdict under those factors.

First, the court considers the evidence about the length of time plaintiffs invested in the case. Defendant makes much of plaintiffs' lack of any time records, but defendant did not produce any time records either. The absence of any time records from either plaintiffs or defendant may have prevented the jury from comparing the time invested by either side to the total expended. But, the evidentiary record isn't as barren as defendant's motion suggests. The jury heard evidence estimating the time that Mr. Skepnek devoted to the case. During Mr. Skepnek's testimony, a blow-up calendar from 2002 to 2010 was marked to show dates Mr.

---

[2] *Starkey* involved an issue of *quantum meruit* as applied to an unenforceable fee contract between the attorney and his client's estate. 796 A.2d at 239. *Szcepanski* involved a reasonable fee determination when the substantive law required defendants to compensate plaintiff for her attorney's fees and plaintiff had a contingency fee agreement with her attorney. 661 A.2d 1234.

Skepnek worked on the case. *See* Doc. 405-4 at 2. During direct examination, Mr. Skepnek methodically recounted dates that he travelled to New Jersey to work on the case. Doc. 391 at 36–96. He also provided dates when he performed other work. Although this does not strictly comply with the time records factor, the jury did not reach its verdict without any evidence of the time contributed by plaintiffs.

The jury also heard evidence about the quality of plaintiffs' representation in the battle to keep the Prudential clients. Ex. 68; Doc. 392 at 214–17. The jury heard about a letter Mr. Skepnek drafted and defendant's employee distributed to the shared clients. In the letter, Mr. Skepnek provided the clients with reasons why they should not dismiss their claims against one of the defendants in their cases. In the client email attaching the letter, one of defendant's employees reported that Mr. Skepnek was available to speak with the clients—making him a central point of contact for the matter. This evidence allowed the jury to understand the role Mr. Skepnek had played in this critical phase of the cases. The jury also heard testimony about the results of Mr. Skepnek's efforts—it allowed plaintiffs and defendant to keep the 160 shared clients. Ex. 109; Doc. 393 at 97–101.

The evidence included ample proof about the quality of Mr. Skepnek's representation, including his "masterpiece" and the result of those efforts (Ex. 290; Doc. 393 at 82–84). Mr. Skepnek's "masterpiece" was a 30-page analysis that he prepared and used to draft a motion for summary judgment in the underlying cases. Finally, the jury heard evidence of the fee realized from the joint representation—approximately $16.5 million. Doc. 393 at 193–96. This evidence is not the only evidence the jury heard about plaintiffs' contributions to the success of the shared representation, but they provided the jury with a significant evidentiary basis to support their verdict under the *La Mantia* factors.

6

Although the jury did not hear an exact accounting of time and an hourly rate, it heard evidence of the factors that New Jersey law considers relevant to *quantum meruit*. This evidence was far more than "a mere scintilla" favoring plaintiffs.[3] In fact, plaintiffs presented evidence to the jury from which it properly could find against the movant. In sum, New Jersey law does not require hourly records in a case like this one.

C. **Expert Testimony**

Next, defendant argues that it deserves judgment as a matter of law because plaintiffs did not provide expert testimony that would allow the jury to determine plaintiffs' contribution to advancing the case, the quality of plaintiffs' services, or the results of plaintiffs' efforts. Doc. 373 at 11–13. In doing so, defendant argues that plaintiffs' contribution is beyond the ken of the average juror, so expert testimony was required. *Id.* at 12. Defendant relies on *Rocco v. NJ Transit Rail Operations, Inc.*, 749 A.2d 868 (N.J. Super. App. Div. 2000), to support this argument.

In *Rocco*, the New Jersey court held that "[e]xpert testimony is required when the subject matter to be dealt with 'is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable.'" 749 A.2d at 879; *see also Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1121 (N.J. 1993); *Butler v. Acme Markets, Inc.*, 445 A.2d 1141, 1147 (N.J. 1982). Defendant's reliance on *Rocco* is misplaced. The issue in *Rocco* involved a products liability claim for an automobile. The *Rocco* court further explained that, "[w]here the case involves a complex instrumentality, expert testimony is needed in order to help the fact-finder understand 'the mechanical intricacies of the instrumentality' and help to exclude other possible causes of the accident." 749 A.2d at 879.

---

[3] *See Weichert*, 2016 WL 1273922, at *2.

7

*Rocco's* additional explanation shows that the New Jersey court believed that "esoteric" subject matter was the mechanical intricacies of the instrumentality at issue.

In an earlier New Jersey Supreme Court case standing for the same general proposition, *Hopkins v. Fox & Lazo Realtors*, that court found that jurors of ordinary experience could comprehend a case about tripping over a stair that was difficult to see. 625 A.2d at 1121. Evaluating the *quantum meruit* factors here more closely resembles the evaluation in *Hopkins* than it does the complex mechanical instrumentality at issue in *Rocco*. Jurors of ordinary experience could comprehend and evaluate the plaintiffs' contributions to the recovery that produced the fee dispute. Meetings, letters, emails, and legal analysis captured plaintiff's contributions. The evidence submitted to the jury, as described in part I.B. *supra*, provided the jury with a reasonable, factual basis to evaluate the usefulness of plaintiffs' contributions to the efforts generating the fee. While a jury of lay persons probably could not evaluate the quality of plaintiffs' legal analysis, they could evaluate the level of effort that plaintiffs devoted to this joint representation. No expert testimony is required to conclude—as the jury's verdict reflects—that 30 pages of written analysis contributed something of value to a successful outcome. New Jersey law does not require expert testimony to sustain a *quantum meruit* finding of the kind the jury made here.

Defendant analogizes this case to a legal malpractice case and uses this analogy to argue that, like legal malpractice cases, expert testimony was required here. Doc. 373 at 13; Doc. 408 at 14. But, this analogy is not quite right. New Jersey law requires expert testimony in legal malpractice cases because "'the duties a lawyer owes to his client are not known by the average juror,' [and so,] expert testimony must necessarily set forth the duty and explain the breach." *Buchanan v. Leonard*, 52 A.3d 1064, 1071 (N.J. Super. Ct. App. Div. 2012) (quoting *Carbis*

*Sales, Inc. v. Eisenberg*, 935 A.2d 1236, 1244 (N.J. Super. Ct. App. Div. 2007); *see also Kranz v. Tiger*, 914 A.2d 854, 861 (N.J. Super. Ct. App. Div. 2007). This rule makes sense. Courts cannot expect a typical juror to know when an attorney owes a duty or whether breaching any such duty caused the plaintiff to sustain damages. But the analysis here did not turn on such esoteric questions. In large measure, the jury's verdict required them to assess the quantity of each lawyer's investment in the case, the result of the case, the reason that defendant elected to involve plaintiffs in the case, and the value of the recovery realized. All are the kind of factors a typical juror can comprehend. And while one factor considered "the quality of the representation,"[4] this factor does not necessarily require a lawyer's evaluation of the work performed. Instead, the outcome of the underlying cases provided the jury with a reasonable basis to evaluate this quality factor. In sum, defendant has not established that expert testimony was required. Defendant is not entitled to judgment as a matter of law on this basis.

### D. Lack of Testimony from Mr. Smoot

Finally, defendant argues that it is entitled to judgment as a matter of law because Mr. Smoot did not testify. Doc. 373 at 14. Mr. Smoot was not required to testify. Instead, Mr. Skepnek's testimony provided the jury with sufficient evidence to evaluate the value of Mr. Smoot's contributions. Doc. 391 at 36–41, 45, 52, 54–58, 63, 73, 94–96; Doc. 392 at 13–14, 16, 21, 101–03, 140, 159, 173. This evidence enabled the jury to assess the value of Mr. Smoot's work.[5]

Defendant has failed to demonstrate it is entitled to judgment as a matter of law.

---

[4] *La Mantia*, 561 A.2d at 278.

[5] Mr. Smoot appeared at trial and defendant easily could have secured his appearance as a trial witness. Nothing prevented defendant from handing Mr. Smoot a trial subpoena while he was standing in the courtroom.

9

## II. Motion for a New Trial

Defendant moves for a new trial because, it claims: the jury's finding was against the weight of the evidence; the court erred by failing to instruct the jury that any fee awarded to plaintiffs must be reasonable, and the jury award was contrary to the Rules of Professional Conduct; Mr. Skepnek allegedly committed perjury; and the court erred by admitting Exhibit 12. Doc. 373 at 1–2. None of these reasons entitles defendant to a new trial.

### A. Legal Standard

After a jury trial, the court may grant a new trial on all or some of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Motions for new trials are committed to sound discretion of the trial court." *Rivera v. Rivera*, 262 F. Supp. 2d 1217, 1223 (D. Kan. 2003); *see also McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556 (1984); *Hinds v. Gen. Motors Corp.,* 988 F.2d 1039, 1046 (10th Cir. 1993). "A party seeking to set aside a jury verdict must demonstrate trial errors which constitute prejudicial error, or that the verdict is not based on substantial evidence." *White v. Conoco, Inc.,* 710 F.2d 1442, 1443 (10th Cir. 1983); *Rivera*, 262 F. Supp. 2d at 1223. On a new trial motion, the court views the evidence in the light most favorable to the prevailing party. *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1156 (10th Cir. 2006).

Defendant makes four arguments to support its request for a new trial. The court addresses each of them in subsections B through E.

### B. Verdict Against the Weight of the Evidence

First, defendant argues that the verdict is against the weight of the evidence. Doc. 373 at 16–17. "The court must invoke its discretionary power only in an exceptional case where the verdict was clearly, decidedly, or overwhelmingly against the weight of the evidence." *Rivera*,

262 F. Supp. 2d at 1231. After reviewing the record as a whole and, especially, the facts discussed in Part I.B. *supra*, the court concludes that the verdict is not against the weight of the evidence. As plaintiffs point out, Mr. Skepnek testified extensively over three days. During that time, he provided evidence of the days he worked and travelled to New Jersey, the critical legal analysis he prepared, and other efforts he dedicated to this joint representation. The court finds that the jury's verdict was not clearly, decidedly, or overwhelmingly against the weight of the evidence.

### C. Reasonable Fee Jury Instruction

Defendant contends it is entitled to a new trial because the jury was not instructed that legal fees must be reasonable. Doc. 373 at 17–18. The court addressed this argument during the jury instructions conference. And, it decided that the reasonable fee requirement was a legal requirement and thus not one for the jury to assess. Doc. 401 at 266–67. The court holds the same view now.

Also, defendant argues that the award is contrary to the Rules of Professional Conduct. This argument is based on two central issues: (1) an unreasonable fee based upon awards to clients plaintiffs never represented, never appeared on behalf of, and did nothing to advance their cause; and (2) fee-sharing with lawyers not in the same firm. The New Jersey courts have permitted attorneys to recover on *quantum meruit* actions against other attorneys. *See La Mantia*, 561 A.2d at 276; *Bruno*, 852 A.2d at 199. And defendant has cited no authority that a New Jersey court found such claims to contradict the Rules of Professional Conduct. Defendant's unsupported argument does not persuade the court to supplant the jury's verdict.

### D. Perjury Allegation

Defendant next argues it is entitled to a new trial because it alleges that Mr. Skepnek committed perjury. Doc. 373 at 19. Ordinarily, a witness's credibility and the assessment of the witness's testimony are proper issues for the jury. *See Motive Parts Warehouse v. Facet Enters.*, 774 F.2d 380, 391 (10th Cir. 1985). For the court to grant a new trial on the grounds that "a witness willfully testified falsely to a material fact, the perjury must be clearly established." *Id.*; *see also Hunter v. Thomas,* 173 F.2d 810, 812 (10th Cir. 1949). "Where the court is left to speculate as to whether erroneous testimony was inadvertent or intentional, perjury has not been clearly established." *Motive Parts*, 774 F.2d at 391.

Here, defendant had ample opportunity to cross-examine Mr. Skepnek during the trial and attack his credibility on the very point where—defendant claims—he testified falsely. Now, defendant claims Mr. Skepnek testified falsely that he and Mr. Smoot "had never been offered any money by Defendant for their services." Doc. 373 at 19. Attached to its motion, defendant provides evidence of settlement offers to support its argument. *See* Docs. 409-2–4. Finally, defendant claims Mr. Skepnek's rebuttal testimony was extremely prejudicial because it was the last testimony the jury heard. *Id.* However, following this direct examination, defendant's counsel had another opportunity to cross-examine Mr. Skepnek. Doc. 395 at 18.

Defendant now asks the court to determine whether Mr. Skepnek willfully testified falsely or if he was not counting these as an offer in the sense that the question used the term. This is the exact type of speculation that reveals defendant has not established perjury clearly. There are many flaws in defendant's argument. For one, a witness's inconsistent answer does not necessarily constitute perjury. Perjury occurs when a witness willfully and falsely swears to a material fact upon oath before a court. *See Motive Parts*, 774 F.2d at 391. Defendant has not

shown that Mr. Skepnek willfully and falsely testified. For another, defendant's conduct during the trial was not spotless.[6] Regardless, the court cannot say, in this context, that Mr. Skepnek intentionally perjured himself. Defendant has not met its burden to establish perjury clearly.[7] The court declines to grant a new trial on this basis.

E. **Exhibit 12 Admission**

Defendant's final argument for a new trial is Exhibit 12. Doc. 373 at 19. Defendant says the court committed prejudicial error when it admitted this exhibit into evidence. Defendant calls this exhibit a contract, presumably, because the parties discussed it early in the case as part of plaintiffs' breach of contract claims. But this exhibit was not admitted as a contract. The court admitted this exhibit as relevant evidence under the New Jersey elements of *quantum meruit*. The exhibit was directly relevant to whether defendant had accepted plaintiffs' services and whether plaintiffs reasonably expected compensation from defendant for the services they performed. The exhibit's probative value was not outweighed by unfair prejudice. *See* Fed. R. Evid. 403.

Next, defendant claims the limiting jury instruction (Doc. 358 at 10) about the exhibit was insufficient. Doc. 373 at 19. The court disagrees. The jury heard no evidence or argument about the breach of contract claims. Nor, did it hear evidence or argument about the unenforceability of the alleged fee-sharing contract. *See* Doc. 403 at 34. The court concludes that admitting Exhibit 12 was not prejudicial error.

---

[6] During closing argument, defendant's counsel explicitly argued that attorneys associated with defendant had worked a specific number of hours on the shared representation. Doc. 369 at 3–13. Plaintiffs objected that the record included no such evidence. After reviewing the record, the court concluded that plaintiffs' objection was well-founded and submitted a curative instruction. Doc. 359.

[7] *See Motive Parts*, 774 F.2d at 391.

Defendant has failed to demonstrate that any trial errors constituted prejudicial error, or that the verdict is not based on substantial evidence. Defendant is not entitled to a new trial under the prevailing legal standard.

### III.      Remittitur

Defendant's final argument is that it deserves remittitur. "[I]n an ordinary remittitur case, the plaintiff must be offered a choice between a new trial and accepting a remittitur to avoid a serious problem under the Seventh Amendment, which reserves to the jury the determination of damages." *O'Gilvie v. Int'l Playtex, Inc.*, 821 F.2d 1438, 1447–48 (10th Cir. 1987). Determining damages is traditionally a jury function because the jury has heard the evidence first hand and observed the witnesses' demeanor. *Whiteley v. OKC Corp.*, 719 F.2d 1051, 1058 (10th Cir. 1983). The Tenth Circuit has warned that "the jury's determination of the damages is considered inviolate" unless "an award [is] so excessive as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial." *E.g.*, *Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 703 F.2d 1152, 1168 (10th Cir. 1981). So, in a typical situation, the trial judge must review the verdict and decide whether substantial evidence supports the award. If the evidence is insufficient to support the award, or if the trial judge finds the verdict's amount is "a product of jury passion or prejudice, the court then may determine a reasonable amount as plaintiff's damages and allow plaintiff to remit the excess over such amount." *O'Gilvie v. Int'l Playtex, Inc.*, 821 F.2d at 1448.

"[Jury] bias, prejudice or passion can be inferred from excessiveness." *Malandris,* 703 F.2d at 1168. "However, a verdict will not be set aside unless it is so plainly excessive as to suggest that it was the product of such passion or prejudice on the part of the jury." *Id.* Consistent with these principles, the trial judge should not order a new trial or remittitur "when

14

the amount of damages turns on weighing credibility of the witnesses, or resolving conflicting evidence." *Boardwalk Apartments, L.C. v. State Auto Prop. And Cas. Ins. Co.*, 85 F. Supp. 3d 1275, 1283–84 (D. Kan. 2015).

Here, the jury heard testimony about the two-phase settlement of the underlying cases and the attorneys' fees associated with those settlements—totaling about $16.5 million. Doc. 393 at 174–86. The jury also saw the lien claims against those fees which provided more information necessary to help it determine the fees defendant may have received. *Id.* at 181–82. Finally, the jury heard evidence from both plaintiffs and defendant debating the value of plaintiffs' contribution to the total fee recovered. *See id.* at 186; Doc. 400 at 59–65. Plaintiff presented sufficient evidence to the jury for it to make a damages finding. In the context of that evidence, an award of $2.25 million may not represent the award that the court would have made if the parties agreed to try this case to the court. But, the parties did not stipulate to a bench trial, and the jury's verdict is not "plainly excessive" and it does not "shock the [court's] conscience." *Malandris,* 703 F.2d at 1168. The court thus rejects defendant's request for remittitur.

## IV.     Conclusion

For reasons discussed above, the court denies defendant's Motion for Judgment as a Matter of Law, or alternatively for a New Trial or Remittitur (Doc. 372).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Roper & Twardowsky, LLC's Motion for Judgment as a Matter of Law, or alternatively for a New Trial or Remittitur (Doc. 372) is denied.

**IT IS SO ORDERED.**

**Dated this 8th day of September, 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
